JAMES H. WILSON, Plaintiff in Error, *v.* JOHN M. CROCKET, Defendant in Error.

1. *Personal property, sale of — Right acquired by vendee.* — The vendor of personal property can convey to the vendee no higher title than he himself holds (excepting in case of commercial paper transferable by delivery). If the property sold has been obtained by the vendor by theft, or finding, or any other means, without the consent of the owner, the owner can claim restitution from the vendee, although it be sold and purchased *bona fide* and for a valuable consideration.

2. *Property taken in war, title to — Evidence.* — The government may acquire a perfect title to property by capture from the enemy in time of war. And any person using his property or permitting it to be used for unlawful purposes against his government might render it liable to condemnation and forfeiture, but to justify a transferrence of title under this prerogative power the facts must exist. Mere possession by an officer of the United States army will not establish the title. The facts of the capture or forfeiture must appear.

*Error to First District Court.*

The facts appear in the opinion of the court.

*A. J. Seay,* for plaintiff in error.

I. The evidence discloses no capture or confiscation, no brand, and does not pretend to try to show that appellant was a public enemy.

II. A larceny of property does not pass the title to the thief or those claiming through him, however remote. No one can transfer to another a greater interest in personal property than he, or the principal for whom he acts, possesses. The owner cannot be divested of title except by his own consent or by operation of law.

III. The government of the United States, having no title, could pass none to the respondent. Appellant having established ownership, it devolves on respondent to show he had parted with the title by his own consent or by operation of law. This the respondent does not attempt to do. The following authorities are referred to: Hoffman v. Haron, 22 Wend. 185 ; Hill. on Torts, 65, note ; Will. on Pers. Prop. top p. 498, and note. The law of *caveat emptor* clearly applies to this case. The plaintiff has

no remedy against the government. (Sto. on Sales, §§ 188, 201, 394; 1 Wend. 185; 11 *id.* 80; 2 Kent's Com. top p. 380 to 382, and notes.)

IV. The court erred in interlining instructions. A party has a right to stand or fall upon his own proposition. (40 Mo. 151.)

*Perry,* and *Ewing & Smith,* for defendant in error.

The title to personal property captured by the United States military forces from the domestic enemy of the United States, during the late war of the rebellion, vested in the government; and under a sale thereof by the government a good title thereto passed to the purchaser thereof as against the original owner. (Wheat. Int. Law, p. 454, § 359; Wheat. Ele. Int. Law, 419; Vatt. p. 364, § 161.)

WAGNER, Judge, delivered the opinion of the court.

This was an action under the statute for the claim and delivery of personal property, brought by the plaintiff against the defendant to recover the possession of a horse. The defendant had judgment both in the Circuit and District Courts. It is needless to comment with any particularity on the instructions, as they are somewhat confused and incongruous, and some of them were wholly unsupported by any evidence in the cause.

But the record shows that there is a single point of law involved, the determination of which must decide the whole case. The plaintiff's horse was stolen in 1862, and was purchased at a quartermaster's sale, at Springfield, in January, 1863. There was no evidence to show how the horse came into the possession of the quartermaster — whether he was captured from the enemies of the government — nor that it was ever condemned and confiscated. It was not branded, nor were there any *indicia* to show that the government asserted any title to it.

Upon proof of bare possession and sale by the officer, the court held that a perfect title passed to the purchaser, and that the plaintiff was divested of his rights without any fault on his part.

It was a maxim of the civil law, and has been generally admitted by the writers on common law, that *nemo plus juris in*

*alium transferre potest, quam ipse habet;* and this is plainly common sense and justice.

It is said, by the author of a treatise on sales, that the general rule is that the subject of sale must belong to the vendor, and that he can sell no more than the interest which he legally possesses. If, therefore, he sell an article not belonging to him, whether it was obtained by theft, or finding, or by any other means, without consent of the owner, the person whose property it is may claim restitution thereof from the hands of the vendee, although it be sold and purchased *bona fide* and for a valuable consideration; for, unless the property were divested from the original owner by a legal and valid sale or transfer, it would still remain his property, in whatever innocent hands it might subsequently come. (Sto. Sales, by Perk., § 188.)   This doctrine is maintained by a great array of authorities.   (See Peer v. Humphreys, 2 Ad. & El. 495; White v. Spettigue, 13 Mees & W. 603; Cooper v. Willomatt, 1 Com. B. 672; Lee v. Boyes, 18 *id.* 599; Williams v. Merle, 11 Wend. 80; Root v. French, 13 Wend. 570; Mowrey v. Walsh, 8 Cowen, 238; Towne v. Collins, 14 Mass. 500; Ruffington v. Gerrish, 15 *id.* 156; Wheelwright v. Depeyster, 1 Johns. 471; Trott v. Warren, 2 Fairfield, 227.)

In Ventress *et al.* v. Smith (10 Pet. 175), Thompson, J., said: "It is a general rule of law that a sale by a person who has no right to sell is not valid against the rightful owner."

In England it was formerly held that a valid title was obtained to personal property by a purchase in open market, or *market overt*, although no property had been previously possessed by the vendor.   But the rule of law in relation to *market overt* was never adopted in the United States.

There is an exception to the foregoing doctrine in the case of a negotiable instrument which passes by transfer and delivery. And the title to it will vest in any person taking it *bona fide,* for a valuable consideration, whatever defects may have existed in the title of the person transferring it to him.

The only claim through which defendant derives title is the sale of the quartermaster.   If the government had no valid title, the defendant has none.

Wilson v. Crocket.

The title to property lawfully taken in war may, upon general principles, be considered as immediately divested from the original owner, and transferred to the captor. (Wheat. Int. Law, by Dana, § 359.) Vattel gives as a reason for this : " That, whenever we have an opportunity, we seize on the enemy's property and convert it to our own use ; and thus, besides diminishing the enemy's power, we augment our own, and obtain at least a partial indemnification or equivalent, either for what constitutes the subject of the war or for the expenses and losses incurred in its prosecution. In a word, we do ourselves justice." (Vat. bk. III, ch. IX, § 161.) It is clear that the government may acquire a perfect title to property by capture from the enemy in time of war. And any person using his property, or permitting it to be used, for unlawful purposes against his government, might render it liable to condemnation and forfeiture. But to justify a transferrence of title under this high prerogative power, the facts must exist authorizing its exercise. There is not a scintilla of evidence showing, or tending to show, that the horse in controversy was ever captured by the national forces ; that it was ever in possession of the rebels, the enemies of the country ; or that it came into the hands of the quartermaster by any lawful authority. Nor is it shown that the plaintiff was disloyal, or ever aided or assisted the enemy. For aught that appears, it may have strayed into the inclosure where the other horses were kept. No law that pretends to maintain the rights of property to the citizen would sanction a divestiture under such circumstances. There was some conflict in the testimony in regard to the identity of the horse, which it is not my province to discuss, as it is a matter exclusively for the consideration of the jury, and which must be determined by them when the case is re-tried.

My conclusion is that the judgment should be reversed and the cause remanded. The other judges concur.