HENRY WELLMAN, Plaintiff in Error, *v.* WILLIAM WICKERMAN, Defendant in Error.

1. *Sale — Seizure of mare by government—Condemnation and sale of by—War power.*—Suit was brought for the possession of a mare. The proof showed that she was taken by direct authority of the government of the United States, to meet a pressing exigency; that she was used in the military service, and then condemned and sold under the order of the department commander, with a direct and unequivocal assertion of title in the United States. Defendant became the purchaser, and suit was brought for her recovery by the original owner. *Held,* that plaintiff was not entitled to recover. Under the exigencies of the case, the government could seize and condemn the property, and impart good title by sale. If the claim were valid it should be brought against the United States.

### Error to Sixth District Court.

*Redd,* for plaintiff in error.

*D. P. Dyer,* and *Ledford,* for defendant in error.

WAGNER, Judge, delivered the opinion of the court.

This was action in the Ralls county Circuit Court for the possession of a mare. The facts are few and simple, and appear from the record to be these : in the fall of 1864 the plaintiff's mare was taken or pressed into the service of the United States by soldiers, and used by the government. At the time the mare was taken plaintiff was requested to go to Hannibal and get a receipt for her. This, it seems, he never did. The mare was afterward turned over to Joel K. Shaw, a quartermaster in the army of the United States, appointed and commissioned by the President. , While the mare was in the possession of the quartermaster she was branded "I. C.," denoting that she had been inspected and condemned; and the letters "U. S." were also branded upon her, indicating the claim and ownership of the government. She was sold at Warrensburg, Mo., at a government sale, by the quartermaster, acting under orders and direction of Maj. Gen. Dodge, at that time commanding the department of the Missouri. Under this sale the mare was purchased by the person from whom defendant derives title. The court refused

the instructions of the plaintiff to the effect that if the jury believed from the evidence that the plaintiff neither sold nor delivered the mare to the United States. nor any officers thereof, then a sale by the United States or her officers vested no title in the defendant. Instructions were given, at the instance of the defendant, that if they found the facts as substantially stated above, then the verdict should be for defendant. The jury found for defendant, and judgment was entered on that finding, which judgment was affirmed in the District Court, and the case is brought here by error.

This case is entirely different from Wilson v. Crocket, 43 Mo. 216. In that case there was no evidence to show how the horse came into the possession of the quartermaster; it was never condemned, nor was it branded, nor were there any *indicia* to show that the government asserted any title to it. There was a complete absence of evidence to show that it came into the hands of the quartermaster by any lawful authority.

This case presents a very different view. Here the mare was taken by the direct authority of the government, to meet a pressing exigency. She was used in the military service, and then condemned and sold under the order of the department commander, with a direct and unequivocal assertion of title in the United States.

In Coolidge v. Guthrie, 8 Am. Law Reg., N. S., 22, the action was trover to recover the value of certain cotton. The facts found showed that in July, 1862, Gen. Curtis, commanding an army of the United States, took military possession of the town of Helena, in the State of Arkansas. That State was then in rebellion against the United States. The cotton was raised on farms belonging to Gen. Pillow, who was, at the time of the seizure of the cotton, in the military service of the rebel government.

The legal title and ownership of the cotton, however, at the time of its seizure by Gen. Curtis, was in the plaintiff Coolidge. He was a resident of Arkansas, but was in no wise engaged in the rebellion. All the facts relating to the cotton were known to the defendant Guthrie. Under these circumstances, and with full

knowledge, Guthrie purchased the cotton from Gen. Curtis, who acted on his own responsibility, no act of Congress having at that time been passed authorizing and regulating such seizures. Mr. Justice Swayne, sitting in the circuit, held that the court had no jurisdiction; that the seizure was made as an act of war, and its validity was not triable in a municipal court, in a common-law proceeding. It is true that in that case the seizure was made in a State in rebellion against the government, where belligerent rights were granted, and where all property was regarded as enemies' property. (The prize cases, 2 Black. 687; Mrs. Alexander's cotton, 2 Wall. 417; Mauran v. Insurance Co., 6 Wall. 1.) Judge Swayne, in delivering his opinion, said that no action would lie against Gen. Curtis for the seizure, and that, consequently, no liability would attach to his vendee.

In the case of Yost *et al.* v. Stout, 4 Cold. 205, the Supreme Court of Tennessee repeated the doctrine laid down in Mitchell v. Harmony, 13 How. 128, and said: "Occasions may arise in the exigency of the service when an officer may destroy private property to prevent its falling into the hands of the public enemy, or where an officer who is charged with a particular duty may impress private property and take it for public use; and then the government would be bound to compensate the owner, and the officer would not be a trespasser. In all such cases the danger must be immediate and impending, or the necessity for the public service so urgent as not to admit of delay for the civil authorities to provide the means which the occasion called for."

It is said by Kent, "there are many cases in which the rights of property must be made subservient to the public welfare. The maxim of the law is that a private mischief is to be endured rather than a public inconvenience."

In Drehman v. Stifel, 41 Mo. 185, this court declared that for property taken for public use, or property destroyed by military authority, the government, and not the officer, was responsible. It would be a most singular anomaly to say that the officer was exempt — that the government was responsible to the individual whose property was taken — and yet, after the government has assumed the responsibility, used the property,

condemned and sold it for a valuable consideration, that the innocent vendee could be deprived of his rights at the suit of the original owner.

The anomalous condition in which the civil war placed us renders it quite impossible to obtain exact precedents. The cases have generally turned on hostile seizures, and where such was the fact they all agree that recourse must be had to the government only. (See the learned and elaborate judgment of Lord Mansfield in Lindo v. Rodney, Doug. 613, note; Elphinstone v. Bedreechund, 1 Knapp, P. C. 316.)

The occasion that invoked the impressment of the plaintiff's mare is a part of the history of the State. Martial law prevailed. It was at the time that Gen. Sterling Price, at the head of a formidable Confederate force, invaded our territory. The occasion was emergent, calling for immediate and pressing action on the part of the military arm of the government to resist and expel the invaders. As the enemy were all mounted, it was necessary to have mounted troops to meet them, and hence the order for the impressment of horses. These horses were taken by the government in the exercise of a pressing necessity and by virtue of its war power; and the government thereby became responsible to the owners for their value. Some were killed or died in service; others, after they were no longer needed, were condemned and sold on government account. By this action the government asserted a complete title, and assumed all liability. The evidence is positive that the plaintiff's mare was condemned by the military, acting under the authority of the government, and sold by its express direction. The officers had jurisdiction of the subject matter, and their action is not reviewable here.

Such a step, besides being utterly futile, would result in the greatest injustice. Persons knowing that the government had not only the possession, but also claimed title, and that the property had been condemned, expended their money with the belief and expectation that they were acquiring a good title. We have not the means, if we had the power, which would justify us in going behind the action of the officers in making the condemnation, and judging of its legality.

If the plaintiff has a good and valid claim, it is against the government, and he should appeal to it for justice and remuneration, but he can not be permitted to maintain this proceeding against the defendant; wherefore, I think the judgment should be affirmed. The other judges concur.