## Case No. 6,644.

HOLMES v. SHERIDAN et al.

[1 Dill. 351;[1] 4 West. Jur. 339.]

Circuit Court, D. Kansas. 1870.

PRACTICE—PERSONAL LIABILITY OF MILITARY COMMANDERS.

1. Where two actions against the same defendants, one for trespass to the person, and the other for trespass to property, arose out of the same transaction, and might have been joined, the court, instead of ordering them to be consolidated, directed that they be tried at the same time and to the same jury.

[Cited in Keep v. Indianapolis & St. L. R. Co., 10 Fed. 459.]

2. A major-general in command of an army in the field in the Indian country may lawfully issue an order to arrest a person therein who has induced friendly Indians to steal cattle for him, with a view to turn such cattle over to the government under contracts to supply the army with beef; and the fraudulent possessor of such cattle cannot recover for them against the officer who, for such reasons, ordered their seizure.

3. A military commander, under circumstances of actual, urgent, and immediately pressing public necessity, may justify the taking of the private property of the citizen; in which case the citizen must look alone to the government for compensation. The existence of such necessity is a question for the jury, and must be clearly established by the party who alleges it.

4. Army contractors, their agents and assignees, or employees in the course of the execution of their employment, are subject to the rules and articles of war, and are liable to arrest by the military commander for frauds against the government under their contracts;

[1] [Reported by Hon. John F. Dillon. Circuit Judge, and here reprinted by permission.]

but the officer making arrests must proceed, with reasonable diligence, to have the person arrested brought to trial.

5. Rules governing the measure of damages in actions against an officer for false imprisonment, stated.

Actions for trespass and false imprisonment. These were actions of trespass against Philip H. Sheridan and John H. Paige—the one for trespass to the person, and the other to the property of the plaintiff. They were removed into this court from the state court, and, after removal, ordered to be tried at the same time and to the same jury. The defendant, Sheridan, was a major-general in the army of the United States, and the other defendant, Paige, was a major under the command of General Sheridan. The United States government assumed the defence of the actions.

Mr. Sherry and Mr. Green, for plaintiff.

Mr. Horton, Dist. Atty., and Mr. Wheat, for defendants.

DILLON, Circuit Judge (charging jury). I. Under the statutes of the state relating to practice, adopted in this court, these two actions, which were originally brought in the state court, and afterwards removed into this court, might have been joined, and as both actions arise out of the same transaction, this court directed that they be tried at the same time and to the same jury. You are empanelled to try them; but you will consider them separately, the same as if each was alone before you. Both are actions in the nature of trespass,—the one to the property, the other to the person of the plaintiff.

In the action for trespass to property, the plaintiff asks to recover for certain cattle, which he claims that the defendants, on or about February 1, 1869, in the Indian Territory, took and converted to their own use, to the plaintiff's damage, in the sum of $7,900. In the other action the plaintiff claims for his alleged false imprisonment by the defendants, laying his damages in the sum of $25,000. The answers are in denial, and they also set up various defences by way of justification. The nature of these pleas in justification, and what is necessary to sustain them, will be referred to presently.

II. Certain facts, either admitted on the trial or not controverted, may first be referred to. The transaction under investigation took place in the "Indian country." The plaintiff, for himself or others, or both, was in possession of a herd of cattle, the same for which the present action is instituted. The defendant, Sheridan, was a major-general in the army of the United States, and was in command of an army force in the Indian country; and it is alleged that there was a war then being prosecuted by and under the direction of the defendant, as commander, against hostile Indians in the said territory.

On January 22, 1869, General Hazen, in command in the Indian Territory, under di-

rection of General Sheridan, issued a written order to one Lieutenant Doyle, to investigate alleged irregularities in the Indian department of the Indian Territory. On January 26, 1869, Lieutenant Doyle made a written report to General Hazen, stating that, "In regard to the cattle stolen by the Caddo Indians, I have the full particulars. Don Carlos made a clean breast of it;" and he then proceeds to state, in substance, that the Caddo Indians had been induced to steal the cattle; that Don Carlos, Griffenstein, and the plaintiff were concerned in the illegal enterprise of inducing the Caddo Indians to go and steal the cattle, and bring them up with a view to be sold or turned into the government under army cattle contracts. This report was laid before General Sheridan, and it is an undisputed fact that he ordered the cattle, now sued for, to be seized, and the plaintiff to be arrested, which were done, and the plaintiff was confined and put under guard. The cattle thus seized were afterwards turned over to the quartermaster's department and butchered, and fed to or otherwise used by the army. The plaintiff was kept in confinement for some time, and afterwards released by order of General Schofield, the successor in command of General Sheridan. The defendant Paige was a major in the army under the command of General Sheridan, and his part in the transaction consisted in obeying or executing the order of his superior officer.

III. The court will first instruct you in reference to the suit for the cattle. The plaintiff being in possession of the cattle, and the same having been seized by order of the defendant, Sheridan, the plaintiff is presumptively entitled to recover their value; that is, he is entitled to recover, unless the defendants have established some one or more of the defences set up in the answers. These defences will now be stated.

If you believe, from the evidence, that the cattle, for which the action is brought, were stolen, or taken from their owners without their consent, even though such owners may then have been, or may yet be, unknown, and if General Sheridan was informed of such theft, and that the cattle were intended to be put in on army contracts, then the order of the defendant, Sheridan, to seize such cattle would be a lawful one, and would not make him liable personally, and would also protect the defendant, Paige, acting under it.

If you believe, from the evidence, that the plaintiff was a party to a combination, whereby the Caddo Indians were induced to go to a distance where cattle were allowed to range at large by their owners, and to take them, without the consent of such owners, and bring them up into the Indian country with a view to sell or trade the same at a low price to those who sent them, so that the latter could sell or supply them to the government: or, if the plaintiff bought these cattle, knowing or having good reasons to know

they were thus obtained (if such were the fact), he cannot or ought not to recover, for the law, as well as morality, decisively condemns such transactions as alike infamous and criminal, and it is the duty, as it should be the pleasure, of the jury, thus to decide. The burden of proof to show that the cattle were stolen and did not belong to the plaintiff, is upon the defendants. This may be shown by circumstances, if they are satisfactory to the minds of the jury.

IV. But the defendants claim that even if the cattle were not stolen, and though the plaintiff owned them, they are not liable, because they were seized by the defendant, Sheridan, upon a public necessity for the public use; and if so, the plaintiff's remedy is against the government, and not against its officers personally.

A military commander, according to the decision of the supreme court of the United States, may, under circumstances of necessity, take the private property of the citizen without being liable personally, in which case the owner must look to the government for compensation. But to justify a taking upon this ground, the necessity must be actual and urgent, and immediately pressing; and whether such a necessity existed is a question for the jury.

"In deciding upon this necessity, however," says the supreme court, "the state of facts, as they appeared to the officer acting, must govern the decision; for he must necessarily act upon the information of others as well as his own observation. And if with such information as he had a right to rely upon, there is reasonable ground for believing that the peril is immediate and menacing, or the necessity urgent, he is justified in acting upon it, and the discovery afterwards that it was false or erroneous, will not make him a trespasser. But it is not sufficient to show that he exercised an honest judgment, and took the property to promote the public service; he must show by proof the nature and character of the emergency, such as he had reasonable ground to believe it to be, and it is then for the jury to say whether it was so pressing as not to admit of delay; and the occasion such, according to the information upon which he acted, that the private rights must for a time give way to the common and public good." Mitchell v. Harmony, 13 How. [54 U. S.] 115, 135; Wellman v. Wickerman, 44 Mo. 484.

The necessity claimed to exist in the present case is the need of the army in this distant region for animal food to prevent or remove scurvy among the troops, and to preserve or restore their health: of this you will judge, guided by the rules laid down. If such necessity existed, and if the cattle were seized for this reason, this defence is made out; but if no such necessity existed, or if they were seized for other reasons, this particular ground for defence fails. In de-

termining these questions you will look at and consider all the evidence. including the orders given, and the reasons assigned by General Sheridan for the seizure in question. If he assigned reasons for his seizure and did not include or refer to the one now under consideration as one of the grounds of his action, it is a strong, if not conclusive, circumstance to show that the defence of public necessity is not well founded, but is an after thought.

V. The court will now instruct you in reference to the action for false imprisonment. If war existed in the Indian Territory, and the defendant, Sheridan, as military commander ordered the plaintiff's arrest upon information of such character that rendered it probable that the plaintiff and others were guilty of the acts recited in the order for his arrest, and if there were no civil officers in the territory before whom the plaintiff could be prosecuted, then such · arrest would be justifiable. But it would be the duty of the defendant after making such arrest to proceed with diligence to bring the plaintiff before a civil tribunal for the offences imputed to him, if the plaintiff was not subject to the rules and articles of war; and if he was thus subject to such articles, then before the proper military tribunal.

Contractors and their assignees and employes, when in the course of the execution of their employment, are subject to the rules of war, and are liable to arrest and punishment for fraud. Act July 4, 1864, § 7 (13 Stat. 394); Act July 17, 1862, § 16 [12 Stat. 596].

If the defendant failed to discharge the duty above set forth, and either arrested the plaintiff unlawfully, or kept him in confinement without trial an unreasonable time, he would be liable to the plaintiff. If you find that the plaintiff was a contractor or agent of a contractor, or an assignee thereof, for supplies for the army, and that he was endeavoring to practice a fraud upon the government, such as is claimed by the defendants, then the defendant, Sheridan, would, under the abovementioned acts of congress, have a right to cause his arrest, and would not be liable therefor; nor for his subsequent confinement. unless it is shown that the imprisonment was unreasonably long, or proceeded from malice, cruelty, or a desire to oppress and injure the plaintiff.

VI. If you find for the plaintiff in either or both cases, you will have to ascertain the amount of his damages. If the plaintiff is entitled to recover for the cattle, or any part thereof, the fair, actual market value of the cattle at the time and place of seizure is the measure of the damages. In respect to the action for false imprisonment, the measure of the plaintiff's damages (if he is found entitled to recover) is the actual loss sustained, unless the acts of the defendant were wanton, malicious, and oppressive; not done in good faith, but to injure the plaintiff; in which latter case the jury, not to reward the plaintiff, but to punish the defendant and make an example of his conduct, may give, in addition to actual damages, such sum as exemplary damages as they deem fitting and reasonable. But the jury should not go beyond actual damages unless it is shown that the defendant's conduct towards the plaintiff did not proceed from good motives and in the honest discharge of his official duties, but from a disposition or desire to oppress or injure him.

Paige stands, as to liability or non-liability, upon the same footing with Sheridan. If Sheridan's orders were lawful or justifiable, then they protect Paige, who acted under them. If unlawful, they will not constitute for Paige a defence, even though he was a subordinate officer. Mitchell v. Harmony, supra.

The jury found a verdict for the defendants. Judgment accordingly.