DAVID BOWLES, Appellant, *v.* ENOS LEWIS, Respondent.

1. *Sales under military authority, validity of — Valid condemnation or military usage must be shown.* — The act of a public officer is not necessarily that of the government he represents, and it is only so when he follows the law. The government can only act through the law. When obeying the law, its agents properly represent it, and on the seizure and sale of property the law transfers the title. In order to protect the title under a sale by a provost marshal, under color of military authority, the claimant under such sale must show that the property was sold under some valid condemnation or judgment, or that its seizure and sale was authorized by the usages of war; otherwise the action of the provost marshal was a mere trespass.

*Appeal from Sixth District Court.*

*Buckner* and *Gatewood*, for appellant.

I. There is no dispute as to the fact that the officers who ordered the seizure and who made the sale of plaintiff's property had no higher authority than their own official position gave them.

II. Neither the government nor its officers had authority to seize this property. It cannot acquire title to property except by law and under authority of law. (*Ex parte* Mulligan, 4 Wall. 1; Wilson v. Crockett, 43 Mo. 218.)

III. The action of the inferior court is tantamount to declaring that the agent of the government can divest title and give title to property when the government itself could not do either; for the citizen's right to his property is by the constitution protected as well against the government as against his fellow-citizen.

IV. The vendor can sell no more interest than he legally possesses; and if the government had no title, the defendant has none. (Wilson v. Crockett, 43 Mo. 218.)

*Fagg & Dyer*, and *Orrick & Emmons*, for respondent.

The declarations of law made by the court stated the law correctly, and the verdict was for the right party. (Wellman v. Wickersham, 44 Mo. 484.) The evidence here does show how the horse in question came into the possession of the government through its officers, and the fact that the government asserted

title to it.  It was sold by proper authority and the proceeds paid over to the officers of the government.  If the plaintiff has any remedy in this case, it is against the government, and not against a party who is now in possession.  It makes no difference whether the testimony discloses the precise purpose for which it was taken or the circumstances under which it was taken.  The act of these persons was sufficiently recognized, and the court must presume that the possession of the property by the government, with the proceedings, its sale, etc., were sufficient to show its assertion of title ; and any controversy now as to the regularity or propriety of the proceedings on the part of the officers who actually took and sold the property must be between the appellant and the government ; and an innocent purchaser, or those holding under him, should not be called upon to answer for any irregularity of such officers, if in point of fact they were guilty of any.

BLISS, Judge, delivered the opinion of the court.

In the fall of 1864 the provost marshal of the district embracing Montgomery county seized upon the personal property of the plaintiff, sold the same at public auction, and paid over the proceeds of the sale to the provost marshal general of the State, who approved his proceedings.  Subsequently the plaintiff found a horse, part of the property so sold, in the hands of defendant, and brings this action for its recovery.  The record simply shows the fact of seizure and sale, and gives no reason whatever for the proceeding.  The case was submitted to the court, and the defendant claimed that the action of the military authorities passed the title to the property without regard to the grounds of that action. This view was substantially sustained by the court in finding for the defendant under the following declaration of law, given on its own motion : "If it has been shown to the satisfaction of the court, sitting as a jury, that the horse in controversy was seized and sold by authority of the United States government during the late civil war, and that the defendant holds under such sale, then the plaintiff must prosecute his remedy, if any he has, against the government, and the defendant is not liable in this action."

3—VOL. XLVIII.

This declaration would be ambiguous but by reference to the evidence. It is true that if the property was sold by authority of the government, the title passed; but what did the court mean by the phrase "authority," etc.

The act of a public officer is not necessarily that of the government he represents, and it is only so when he follows the law. The government can only act through the law. When obeying the law, its agents properly represent it, and in the seizure and sale of property the law transfers the title. But this could not be the sense in which the action of the government was spoken of, for it nowhere appears that the officers who seized this property had any lawful authority for their action, nor is there any attempt to set up such authority. Hence the declaration embodies the startling proposition that whenever, in a state of war, property is seized and sold by a military officer, whether or not the action is warranted by military law or usage, his act is that of the government whose commission he holds, and the double consequence follows that the citizen may be deprived of his property at the mere will of a military officer, and that the government is bound by the acts of such officer without reference to their legality.

In order to protect his title under the sale, the defendant must show that the property was sold under some valid condemnation or judgment, or that its seizure and sale was authorized by the usages of war; otherwise the action of the provost marshal was a mere trespass. (Wilson v. Crockett, 43 Mo. 218; Wellman v. Wickersham, 44 Mo. 485; Harmony v. Mitchell, 13 How. 128.) To attempt to elaborate so plain a proposition might imply a doubt upon a principle so universally received in all countries where men are governed by law rather than the will of public functionaries. Courts will not permit it to be questioned.

The other judges concurring, the judgment will be reversed and the cause remanded.