NATIONAL MATCH COMPANY, RESPONDENT, v. EMPIRE STORAGE & ICE CO., APPELLANT.—58 S. W. (2d) 797.

Kansas City Court of Appeals, March 6, 1933.

1116

*Harzfeld, Beach & Steeper* for respondent.

*Ringolsky, Boatright & Jacobs* for appellant.

TRIMBLE, J.—For the second time this case is here on appeal. The first time the appeal was by plaintiff. This time it is by defendant. The decision on the former is reported in 19 S. W. (2d) 565, where the facts in detail are correctly and clearly stated, and to which, for said facts, reference is hereby made. If it be necessary to state any additional facts as having been shown, or matters occurring on the second trial, mention of them will be made hereinafter.

As stated in said former opinion, the case is a suit for conversion. This time, i. e., the second trial, it was tried before a jury. At the close of all the evidence the court directed the jury "to find the issues for the plaintiff, and to assess its damages in such an amount as the jury finds and believes from the evidence to be the market value of the three hundred cases of Natco Matches, to which amount the jury may in the discretion of the jury add interest at the rate of six percent from about the 23rd day of March, 1922."

Under such direction, the jury returned a verdict for plaintiff, assessing damages at $1545 and interest at $914.13, a total of $2549.13. Thereupon defendant duly appealed.

The defendant's contention that jurisdiction of this appeal is in the Supreme, and not in this, Court, has been, it seems to us, decided and settled by what was done in reference to, and in connection with, the decision on the first appeal. A motion was made in this court that the cause be transferred to the Supreme Court on the theory that the Court of Appeals had no jurisdiction for the reason that the validity of an authority exercised under the United States, to-wit, under the National Bankruptcy Act, was drawn in question, and that in such case, under Section 12, Article 6 of the Constitution of Missouri and under Section 5 of the Amendment of 1884, the Supreme Court had exclusive jurisdiction.

The motion to transfer was overruled by the Court of Appeals. Whereupon, after the decision was rendered, motions for a rehearing and for transfer to the Supreme Court were filed and both were

overruled. Thereafter defendant filed in the Supreme Court an application for *certiorari* and for a writ of prohibition. Both of these were denied. It would seem that the foregoing acts of the two courts have disposed of the contention of defendant, that jurisdiction herein is in the Supreme Court, by deciding it adversely to defendant.

A careful reading of the record in this appeal *has not uncovered any difference* between the facts now appearing on this or the former appeal with reference to (1) the title of the matches in controversy, (2) the proceedings in the bankruptcy court and (3) the question of whether the validity of an authority under the United States was drawn in question or denied. So that the former decision of this court and the action of the Supreme Court in denying the writs of *certiorari* and prohibition, are binding upon this court on this appeal. [Murphy v. Barron, 286 Mo. 390, 400, 228 S. W. 492, 494; Seibert v. Harden, 8 S. W. (2d) 905, 908.] Nor has any substantial difference been pointed out. Of course, where there are "exceptional circumstances" it is the duty of an appellate court to reconsider the questions decided on a former appeal. These exceptional circumstances may be, for example, when the former decision is out of harmony with other decisions, where incorrect principles of law were inadvertently or erroneously announced, where mistake of fact was made, or where justice would not be done by adhering to first opinion. [Daly v. Sovereign Camp, W. O. W., 55 S. W. (2d) 743; Mangold v. Bacon, 237 Mo. 496, 517.] Of course, where the pleadings are amended and *new issues* are made, or the evidence on retrial is *substantially different* from that considered on the vital issues of the former appeal, then a reconsideration should be had. [Davidson v. St. Louis-San Francisco Ry. Co., 301 Mo. 79.]

There being no exceptional circumstances which call for a reexamination of our former decision in this case and nothing shown to justify us in so doing, or making it our duty to do so, we will not reconsider our decision on the points squarely decided therein. Of course we should, and will, give due heed to questions raised on this appeal but not raised or considered on the former one.

The first of these *new* questions is that plaintiff is, and was, a foreign corporation having no license to do business in Missouri, and therefore it cannot maintain this suit. If plaintiff were "doing business" in this State without a license, as meant by the statutes relating to foreign corporations and requiring a license, or if the cause of action herein grew out of such "doing business" in this State, then the point might be deemed to be well taken. The trouble is the plaintiff's action does not rest upon any contract entered into, or business engaged in, violative of our statutes in reference to foreign corporations. It merely shipped a carload of matches from

its factory in Illinois to a purchaser in Missouri, and herein brought this action to recover its property from the defendant with which it had no privity of contract. Even where a contract made by a foreign corporation *is void* because it had not complied with the laws of this State in relation to "doing business" here, nevertheless such foreign corporation can come into the courts of this State and recover its property. [United Shoe Machinery Co. v. Ramlose, Extrx., 231 Mo. 508, 538; Gutta Percha Mfg. Co. v. Lehrack, 214 Mo. 285, 287; Good Roads Machinery Co. v. Broadway Bank, 267 S. W. 40, 43.]

But it is urged that such rule does not apply where it is inequitable or unjust to allow such to be done, and is never permitted where it will work an injury to an entirely innocent party or give effect to a void contract. There is no quarrel to be raised over this principle; the trouble is in the application of it to the facts of the case at bar. In the first place, the action herein is not based on any contract, legal or void because of plaintiff's failure to be licensed. Plaintiff brought this action to recover its own property from the warehouse company with which it had no contract whatever. The title to the converted property had never passed. It was still in the plaintiff (see case on former appeal, 19 S. W. (2d) 565); 24 R. C. L., p. 45. Klein Brothers, having no title, could not pledge the matches, and the Match Company (plaintiff) could recover even from a pledgee who had parted with value without notice. [Wilson v. Crockett, 43 Mo. 216; Walsh Tie & Timber Co. v. Chester, Perryville, etc. R. Co., 184 Mo. App. 26; International Harvester Co. v. Tyler Warehouse Co., 253 S. W. 400.] However, neither defendant nor anyone claiming through or under it had the matches as an innocent holder for value. When defendant first received notice of plaintiff's claim, it had not expended anything whatever of value. In addition to this, there is no evidence to show that defendant or any other so-called pledgee (who now seems to have no interest therein, having been paid), was unaware of the true facts.

We are unable to see where any estoppel against plaintiff has been shown. Klein Brothers' firm was neither a purchaser nor a pledgee for value of the matches, it was merely a bailee. Defendant, so far as the evidence shows, did not rely upon the alleged bill of lading nor did it receive possession of the property through any transfer of the bill of lading. The matches were in the warehouse at the time defendant had notice of plaintiff's claim. Hence no estoppel is shown to have arisen. Defendant does not seem to have been injured in any way by any action of plaintiff. If defendant suffers in any way by reason of a recovery against it herein, it will do so because of its action in giving up the property stored with it *after* it had notice of plaintiff's claim and having been notified several times that the property belonged to plaintiff. A very good epitome of the

elements of an equitable estoppel, applicable herein, is to be found at the head of a long list of Missouri authorities in 11 West's Missouri Digest 620, Key No. 52, at the head of Subdivision III of "Equitable Estoppel" and dealing with its "Nature and Essentials in General" as follows:

"To constitute estoppel *in pais,* three things must occur: First, an admission, statement or act inconsistent with the claim afterwards asserted and sued on; second, action by the other party on the faith of such admission, statement or act; and, third, injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement or act."

From which it would seem that estoppel cannot be laid hold of by defendant as a defense to itself in this case. Furthermore, it must be remembered that estoppels are not favored and will not be lightly invoked. [Allen Grocery Co. v. Bank of Buchanan County, 192 Mo. App. 476, 482; Wyatt, Admr. v. Wilhite, Jr., 192 Mo. App. 554, 559-60; Osborn v. Court of Honor, 152 Mo. App. 652, l. c. 661.] Moreover, to constitute an estoppel, the proof supporting it must be clear, and the acts relied upon to create it must be absolute and unequivocal. As said in 21 C. J., sec. 139, p. 1139:

"Before an estoppel can be raised there must be certainty to every intent, and the facts alleged to constitute it are not to be taken by argument or inference. Nothing can be supplied by intendment. No one should be denied the right to set up the truth, unless it is in *plain contradiction* of his former allegations or acts. *If an act or admission is susceptible of two constructions, one of which is consistent with a right asserted by the party sought to be estopped, it forms no estoppel."* (Italics ours.)

Also, 10 R. C. L., p. 690, states the matter as follows:

"On the other hand it (estoppel) is available only in defense of a legal or equitable right or claim made in good faith . . . and the acts, claims or conduct relied on to estop *must be plainly inconsistent with the right afterwards set up."* (Italics ours.)

And in 10 R. C. L., p. 692, the further elucidation is given:

"But an act or declaration consistent with good faith, the injurious result of which could not have been foreseen or anticipated by any ordinary forecast, ought not to operate as an estoppel, although injury results therefrom to a third party."

It is furthermore essential that the party, in order to successfully invoke estoppel, must have been misled to his injury. See 21 C. J., sec. 136, p. 1135, where it is said:

"In order to create an estoppel *in pais,* the party pleading it must have been misled to his injury; that is, he must have suffered a loss of a substantial character, or have been induced to alter his position for the worse in some material respect."

Neither can defendant rely upon alleged negligence of plaintiff as one element of estoppel. It is true under some circumstances one may be estopped by negligence which amounts to a breach of duty. But, the record does not bear out the charge of negligence against plaintiff. It discloses the exercise of due and reasonable care on its part. Its agent sought repeatedly to get possession of the goods, but was put off by reasonable and plausible excuses and by promises that the goods would be delivered in a few days. With reference to the rule that one may be estopped by negligence, it is said in 10 R. C. L., sec. 23, p. 695:

"This does not mean, however, that one is to be held estopped when he innocently, for an honest purpose and with reasonable care, furnished to a third party the means by which he perpetrates a fraud from which he who provides the means derives no benefit."

The question whether defendant could or could not have litigated its rights in an interpleader suit was, we think, adjudicated in the decision of this case in the former appeal. However, the bankruptcy court's possession did not prevent it, for the injunction issued to preserve the court's right to possession was dismissed and the *stipulation* in regard to the matches was not an order of court and lost its power, if it ever had any, the moment the action was dismissed. Nor could it be said that by virtue thereof, the property came into the possession of the bankruptcy court.

It is not seen why Sections 14390 and 14391, R. S. 1929, 12 Mo. St. Ann. p. 8191, did not afford defendant adequate means to protect itself by such interpleader.

We have carefully examined the record and briefs in this case, but find no reason for disturbing the judgment because of any objections raised by appellant.

It is accordingly affirmed. All concur.