ROSA CORA SHEPPARD, RESPONDENT, v. TRAVELERS PROTECTIVE AS-SOCIATION, APPELLANT.—124 S. W. (2d) 528.

Kansas City Court of Appeals. January 9, 1939.

*Brown, Douglas & Brown* for appellant.

*Randolph & Randolph* and *Nile L. Vermillion* for respondent.

SPERRY, C.—Plaintiff was beneficiary in a policy of accident insurance issued by defendant on the life of plaintiff's husband. The face of the policy was in the amount of $5000. Insured died November 2, 1928, and on December 8, 1928, defendant paid plaintiff the sum of $995.55 in full settlement of its liability on said policy, and took her final release. Plaintiff instituted this suit on April 5, 1935, claiming the balance of the sum of $5000, or the sum of $4004.45, plus interest thereon from December 8, 1928. Judgment was for plaintiff. Defendant appealed to this court, which reversed and remanded that judgment. [Sheppard v. Travelers Protective Ass'n of America, 104 S. W. (2d) 784.] The cause was again tried to a jury, resulting in verdict and judgment, for plaintiff for the full amount sought, including interest. From this judgment defendant appeals.

The petition alleges the insurance contract; that insured met his death by accidental means within the meaning of the policy, while said policy was in force; that the whole face amount of the policy became due and payable; that defendant paid the sum of $995.55 on account thereof; and prayed judgment for the balance claimed to be due, with interest.

The answer admits issuance of the policy mentioned in plaintiff's petition, the death of insured, and denies all other allegations of the

petition. For further answer it pleaded certain provisions of its constitution and by-laws; that insured's death was due to disease and not to accident; that defendant at all times denied liability on the policy because of the aforesaid pleaded defense; that there existed a *bona fide* dispute as to defendant's liability and that said dispute was compromised and settled in good faith by defendant paying the sum of $995.55 in full settlement of its liability on the policy; that for six years following execution of the release plaintiff made no further claim under the policy and that by reason of plaintiff's apparent acquiescence in said settlement for so long a time defendant had not sought to perpetuate testimony then available but now not available because of death of witnesses, and that by reason of her laches and negligence plaintiff is estopped to deny the validity of the compromise settlement so pleaded.

The chief issue made by the pleadings in this case, as in the former case, was whether the compromise settlement barred any further action on the policy. There was sufficient evidence to go to the jury on the question of defendant's liability unless compromise settlement barred the action. Compromise settlement to avoid litigation is a favorite of the law and furnishes its own consideration. [Wood v. Kansas City Home Telephone Company, 123 S. W., l. c. 15.] Where there is a *bona fide* dispute as to the right of insured to recover on the policy, whether the dispute be as to law or fact, there is sufficient consideration to support a compromise settlement based on payment of an amount less than that called for in the policy. [Yancey v. Central Mutual Insurance Ass'n, 77 S. W. (2d), 149, l. c. 154.] The burden of proving the invalidity of such a compromise agreement is on the one asserting its invalidity. [Wood v. Kansas City Home Telephone Company, *supra*, l. c. 15.]

Avoidance of compromise agreements in release of claim is commonly based on grounds of fraud or duress. When duress is relied on there must be shown a disavowal of the terms of the release within a reasonable time after the duress ceased to operate, accompanied by a tender back of anything obtained under the contract; a restoration of the other party to *status quo*. Failure to disavow within reasonable time, or failure to tender return of benefits received, will ordinarily estop the assertion of duress. [Wood v. Kansas City Home Telephone Co., *supra*; State ex rel. v. Shain, 98 S. W. (2d) 597, l. c. 602.] Where fraud is relied on to avoid the contract a tender of the fruits of the contract of release and settlement is not necessary if the fraud was *in the factum*; otherwise if it occurred in the treaty. [McCoy v. McMahon Construction Company, 216 S. W. 770, l. c. 772; Green v. C. B. & Q. Ry. Co., 213 Mo. App. 583, l. c. 588; Smallwood v. St. Louis San Francisco Railway Company, 263 S. W. 551, l. c. 554; State ex rel. v. Shain, 98 S. W. (2d), 597, l. c. 602.] But, in any event, before one may rely on fraud to avoid the effect

of a compromise and release, the party asserting the fraud must himself have exercised some prudence in ascertaining the truth. [Hannah v. Butts, 14 S. W. (2d) 31.]

This case was tried on the same petition upon which the first trial was had, without amendment; and neither fraud nor duress are pleaded. Failure of plaintiff to plead or rely on fraud or duress in the first instance, or to so amend on the second trial, may have been due to the fact that plaintiff has never tendered to defendant the fruits of the settlement; and to a consideration of the law as above stated. Whatever may have been the reason therefor, the fact remains that neither issue is in the case.

The evidence discloses that insured, at the time of his death, was seventy-two years of age; that on September 25, 1928, he accidentally cut two fingers of his left hand and infection ensued; that some days afterward, and about October 23, 1928, he executed and acknowledged execution before a notary public, a final release on account of said injuries; and that the release recited that he was fully recovered and had returned to his duties on October 19, 1928. His name was not signed to the release by him, but he placed his x mark thereon.

Dr. Wallace, examining for another insurance company, on October 19, 1928, reported that insured had recovered from his injury of September 25, 1928, but had had a "mild hemiplegia attack today," and defendant had knowledge of such examination and report prior to the compromise settlement here involved. Insured's attending physician also signed a proof of loss to another company and certified therein that insured had fully recovered as of October 19, 1928; and defendant also had knowledge thereof. Proof of loss to defendant was accompanied by a letter from the notary acknowledging same, wherein he stated to defendant that insured had fully recovered from the cut fingers and had returned to work; that he had later received a paralytic stroke; and that by reason of said stroke he was unable to sign proof of loss except with his x mark. Plaintiff wrote defendant October 17, 1928, that insured was progressing nicely and would make final report shortly. The death certificate showed cause of death to be: "Acute nephritis parenchymatous duration 7 days. Contributory (secondary) chronic miocarditis." Facts stated therein are *prima facie* true. [R. S. Mo. 1929, Section 9060; Sheppard v. Travelers Protective Ass'n, *supra,* l. c. 787.]

There was medical evidence offered by plaintiff to the effect that "acute nephritis parenchymatous" meant a severe onslaught of a kidney ailment which would result in a total failure of those organs to function; that "chronic miocarditis" was an inflammation and weakening of the heart muscles of long standing; that miocarditis could have developed from blood poisoning after October 19, 1928, and prior to date of death, but that it could not have become chronic in that period of time; and that its existence could have been de-

termined by microscopic examination of the heart, removed in an autopsy.

In addition to the above documentary evidence, there was parol evidence on behalf of defendant to the effect that insured had been treated for a heart ailment several months prior to his death; that urinalyses made at about the same time had shown the presence of albumen in the urine; that he was suffering from diabetes and Bright's disease; that he had suffered a stroke of paralysis on the morning of October 19, 1928, when he fell in his home; that his death was due to these ailments rather than as a result of blood poisoning caused by the cut on his fingers; and that such was the defense relied on by defendant to avoid liability when the compromise settlement was reached.

We have not recounted the evidence on behalf of plaintiff tending to prove that insured died as a result of the effects of blood poisoning caused by the accidental injury, for the reason that, although it was ample to establish said facts, we consider the question here presented for our consideration to be whether or not the court should have sustained defendant's motion for a directed verdict on the grounds that there existed a *bona fide* dispute as to the cause of death, and that that dispute was compromised and settled, which compromise barred recovery in this case.

In Christianson v. Metropolitan Life Insurance Company, 102 S. W. (2d), 682, l. c. 685, this court, speaking through Judge SHAIN, held that where there are two causes present, either of which could reasonably result in death, and but one is covered by a contract of insurance, the fact that the cause within the coverage might or could produce death is not sufficient to sustain a contention that it did cause the death.

At the time this compromise was entered into there was substantial evidence that insured died from the results of accidental injury; but there was also substantial evidence known to defendant at the time, tending to support the theory that death was caused by bodily disease and not by accidental means, which was a valid defense to a suit on the policy. If defendant, in good faith, believing it had such a valid defense, waived same and compromised the claim, such compromise is, within itself, a good defense to this action. [State ex rel. v. Shain et al., 98 S. W. (2d), 597, l. c. 601.] We held in our former opinion that the evidence of record in that case which was about as we have detailed it here, was sufficient to establish the foundation for a compromise, and that, upon that record alone, defendant was entitled to a directed verdict. [Sheppard v. Travelers Protective Association, *supra,* l. c. 787; and we so hold here.

The judgment was reversed and the cause remanded in the former case because of the exclusion of certain evidence, offered by plaintiff, to the effect that the claim adjuster for defendant, during the

negotiations which resulted in the compromise settlement, stated to defendant that if plaintiff sued on the policy defendant would dig up the body of insured, plaintiff's husband, and cut it up into little pieces, "like old beefsteak." Defendant's objection to the introduction of the evidence was by the court sustained on the grounds that fraud or duress was not pleaded, and that it was not competent on any issue made by the pleadings. Plaintiff, in making the offer, stated that it was not offered for the purpose of proving fraud or duress, but for the purpose of proving that defendant's adjuster was not acting in good faith in denying liability. We held in our former opinion that if the above excluded evidence had been admitted, and if it had been believed by the jury, it would have been sufficient to warrant a jury in finding that the adjuster was not acting in good faith in denying liability.

In the case now before us the record shows that plaintiff was permitted to testify to the making of the alleged statement by the adjuster. In answer to defendants objection to that evidence, when offered in the instant case, plaintiff stated that it was not offered for the purpose of proving fraud or duress, but for the purpose of proving that defendant's adjuster was not acting in good faith in denying liability. It was also established by plaintiff's evidence that plaintiff's attorney was present at all times when she and the adjuster discussed the settlement, and that she never attempted to disavow the settlement until this suit was filed, more than six years afterward. Plaintiff's former attorney testified for defendant and denied that such a statement was made by the adjuster, who also denied making same. The court overruled the objection and admitted the evidence but limited it to the issue of good faith on the part of the adjuster.

In admitting the evidence mentioned the trial court followed our former opinion, which became, and is, the law of the case; but the judgment in the former case was reversed and remanded generally, on the record as it then stood. We are, therefore, not precluded from reviewing the record before us as to questions which may be here on this appeal but which were not before us on the record made on the former appeal. [Denny v. Guyton, 331 Mo. 1115, l. c. 1128, 1129.] As to such questions raised by amended pleadings or different evidence the former opinion is not "the law of the case." [National Match Company v. Empire Storage Company, 58 S. W. (2d) 797, l. c. 798.] We will, therefore, proceed to a discussion of points and issues which did not appear in the former case, but which are presented here.

It is urged by defendant that, under the circumstances and facts of record in this case, defendant cannot be affected in any way by what the *adjuster* in this case may have *thought* as to the validity of any claimed defense the defendant may have had; or, to put it

another way, it is contended that the state of mind of the *adjuster* could not affect the validity of the compromise, fraud or duress not being claimed, and it being shown that the adjuster had no authority, actual or implied, to act for the defendant except as a negotiator. This point was not made on the former appeal for the reason that the evidence in question, said to reflect the state of mind of the *adjuster*, was excluded; and if there was evidence touching the actual or implied authority of the agent, or knowledge on the part of defendant as to his state of mind, it is not alluded to or given attention in our former opinion. Defendant urges that such evidence was not presented or urged because the ruling of the trial court made same incompetent; and, hence, that it was not proper, in that case for defendant to present evidence or for us to consider the point. Whatever may have been the reason for failure to give attention to this point in our former opinion it was not there considered; and it is presented here.

Defendant was a fraternal beneficiary company and its constitution, which was in evidence, precludes the adjuster in this case from the power of binding defendant in any settlement of a claim such as this. He had no such power in fact, and could have had none. The following questions, propounded to plaintiff, and answered by her in her testimony, demonstrated that the adjuster did not pretend to have such power, and that plaintiff was not misled into believing that he did have same:

"Q. When you left at the end of the first day had you come to any agreement? A. No.

"Q. Or any tentative agreement? A. No. He *said he would write the company and see if they would agree to what he had agreed to give me.*"

Two different conferences on successive days were had between plaintiff and the adjuster, relative to settlement, and the above conversation occurred at the first conference. Elsewhere in the record it appears that plaintiff stated in evidence that when she saw the adjuster on the second day he then had a letter from the company authorizing settlement for the amount actually paid to her. The minutes of defendant concerning the settlement of the claim recited the facts as to death of insured, the lodgment of the claim, its reference to the adjuster (who at the same time represented another company on this same death) the adjuster's recommendation, and the allowance of compromise settlement on motion and vote by the board of defendant. Thus, the positive uncontradicted and unexplained evidence of plaintiff herself, established the fact to be that the agent, or adjuster, neither had actual nor apparent authority to bind the defendant; that he was neither actually nor apparently the *alter ego* of defendant. And the minutes of defendant's board

meeting do not contradict such evidence, but tend to corroborate same.

There being no fraud, mistake, or duress pleaded or claimed, we hold that what an adjuster may have thought as regards the merits of his principal's defense, is immaterial when it is not shown that the principal either had knowledge of what said adjuster believed or said, or that it shared in such belief. In Yancey v. Central Mutual Insurance Ass'n, 77 S. W. (2d) 149, we held there were no actual facts in existence, which, if true, constituted a valid defense, on which defendant relied, but that its denial of liability was based on facts which, if true, did not constitute any valid defense; and that, therefore, defendant could not have been *bona fide* in its contention of no liability. In the case at bar the facts relied on by defendant as a defense to liability at the time the compromise was affected, if true, were sufficient to bar recovery; and in the former appeal of this case the effect of our holding was that the record there showed, excluding the statement made by the adjuster, that defendant acted in good faith in denying liability because it then possessed certain facts which it believed to be true, and that such facts, if true, constituted a good defense to the claim. We here hold that, in the absence of claim of fraud, mistake or duress, the bare opinion of an adjuster who is shown to have no authority, actual or apparent, to bind defendant in any settlement, and whose personal views were unknown to defendant and never communicated to it, cannot invalidate an otherwise valid compromise settlement.

Nor is defendant estopped to deny the authority of the agent in making the statement because not only was the agent unauthorized so to do and the fact of the statement was unknown to defendant, but the statement is not charged to have had any effect whatever on the mind of plaintiff. Defendant is not, therefore, in the position of having obtained some advantage thereby which it cannot retain and, at the same time, deny the authority of the agent. The situation might be otherwise if fraud or duress were charged, for, in that event, plaintiff may have been influenced to act to her disadvantage, and to the profit of defendant, which circumstances might prevent defendant from being heard to deny the act of the agent. Plaintiff does not claim to have acted because of what the agent said, for she specifically stated, in offering the evidence, that same was not offered in order to prove either duress or fraud, but solely for the purpose of showing that the adjuster was not acting in good faith. .

Before the cause came on for second trial, after same was remanded, defendant filed amended answer in which it pleaded laches and estoppel, which was not pleaded in the former case. It is admitted by plaintiff that the claim was compromised and settled, and a substantial sum paid to her, more than six years before the filing of this suit, and that during said time she never made any complaint of any

kind relative to the settlement, either to defendant or to any one else. During this time two medical doctors who attended deceased during his last illness and for some time prior thereto, have died. Defendant contends that, relying upon the settlement and plaintiff's acquiescence therein by her silence, it did not take steps to perpetuate the valuable evidence of deceased physicians; and that by reason of the settlement it waived its right to an autopsy on the body of deceased, which, if it had then been performed, would surely have established the cause of death in accordance with its contention. If this were a case in equity there might be merit in defendant's contention as to laches. [Whitley v. Fox, 166 U. S. 637; Holman et al. v. Gulf Refining Company, 76 Fed. (2d) 94; Grafeman v. Northwestern Bank, 228 S. W. 359.] But this is a case at law and the Statute of Limitations has not run.

The question here is whether the compromise settlement bars this action. If it does, no need to discuss estoppel; if it does not, then there was only a part payment of the amount due and plaintiff's right to sue for the balance is absolute and only limited by the statutes. To hold otherwise would be to permit defendant to take advantage of its own wrongdoing, if it had been guilty of any wrongdoing.

Complaint is made as to instructions, and also as to the excessive amount of the judgment, *remittitur* having been tendered by respondent. In view of our holding herein it is unnecessary to consider these last mentioned matters.

The judgment should be reversed. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is reversed. *Shain P. J.,* and *Bland, J.,* concur; *Kemp, J.,* not sitting because not member of the court at time cause was argued and submitted.