Victor ODDO, Sr., Appellant,

v.

ASSOCIATED WHOLESALE GROCERS, INC., a Missouri Corporation, Respondent.

No. 24150.

Kansas City Court of Appeals.

Missouri.

Feb. 1, 1965.

Williams, Norton & Pollard, North Kansas City, for appellant.

Rope, Shanberg & Rope, Herbert M. Rope, Kansas City, for respondent.

HUNTER, Judge.

This is an action on a running account brought by Associated Wholesale Grocers, Inc., respondent against Victor Oddo, Sr., appellant. As a result of the jury waived trial the circuit court entered judgment for respondent for $9,606.51 plus $1,499.68 interest.

On this appeal it is acknowledged that the amount of the account owed is correctly set forth in the judgment, and the sole dispute is whether that account is owed by appellant Victor Oddo, Sr., an individual, or by a corporation known as Oddo's Food Center, Inc.

This being a jury waived case, our duty is to review it upon both the law and the evidence as in suits of an equitable nature. The judgment is not to be set aside unless clearly erroneous, and due regard must be given to the opportunity of the trial court to judge the credibility of the witnesses. Civil Rule 73.01(d), V.A.M.R. This we proceed to do.

Associated Wholesale Grocers, Inc., is a corporation owned entirely by its member grocers. Its purpose is to furnish its members with merchandise at the lowest possible cost, assist them in their business and to periodically rebate to them the profits (termed "patronage") derived from its operation. These profits are of three types: (1) Those resulting from stock purchased in the form of net earnings for the fiscal year; (2) a savings account in which the stockholder invests money, and (3) "direct earning that is (sic) allowed each member * * * pro rata of his purchase." The corporation is conducted as a "co-operative", being expressly recognized in the Internal Revenue Code.

Any person or entity desiring membership in respondent (popularly known as "A. G.") must make a written application to it, accompanied by a financial statement showing the applicant's assets and net worth, among other things. A. G.'s by-laws require approval of all requested memberships by its "management"; that is, by its General Manager, Mr. Louis Fox. After such approval the new member is given a stock certificate of respondent corporation, is granted certain credit, and receives the customary membership rights and privileges as well as obligations. Each member furnishes A. G. with an "order strip" which is taken to its IBM department where through automation it initiates an invoice calling for merchandise identified by code and description. When the invoice (order) is filed the result-

ing charge "in turn is printed out of the IBM department on to the member's account." Statements (a member's billing and bookkeeping record) are mailed to all members every week. A. G.'s by-laws give it the right to setoff a member's equities against this account upon cancellation of membership.

Victor Oddo, Sr., for approximately twenty years operated a grocery store under the name "Oddo's Food Center" at 1051 Burlington, North Kansas City, Missouri. His former source of grocery supplies was going out of business, and on September 15, 1959, he made written application in his individual name as sole proprietor for membership in respondent corporation. He was interviewed by one of its employees. He furnished a personal financial statement to obtain credit. Also, a Dun & Bradstreet credit report was obtained on him.

Mr. Oddo testified he told the interviewer that "I had instructed my attorneys and my auditors to take inventory of the store because I was in the process of incorporating, which I had started right round the first part of September to incorporate my store, and he says, 'Well, when you do,' he says, 'You just let me know,' so—." Mr. Oddo was accepted as a member and his capital stock was issued to him as an individual. He provided respondent corporation with a billing strip in his individual name and never changed it thereafter.

Mr. Oddo as an individual member of respondent immediately commenced purchasing grocery supplies from it and continued to do so until December 16, 1961. At a somewhat undesignated time but probably shortly after obtaining his membership in respondent corporation Mr. Oddo mentioned to Mr. Fox, and to several minor employees, that he had incorporated. However, he made no request to respondent for membership for Oddo's Food Center, Inc., or to substitute that corporation in lieu of himself. (It was Mr. Fox's testimony that if such a substitution had been proposed respondent would have asked for a financial statement on the corporation including its net worth before consideration would be given to the request.) He did not ask anyone to bill it instead of him for supplies he continued to order. Nor did he provide respondent with any financial statement of the corporation or disclose its assets or the amount of money with which it commenced business. The sign on his business premises at 1051 Burlington remained until late 1961 as it had since 1942, "Oddo's Food Center". He continued to be billed per the billing strip as an individual. He was furnished in his individual name "statements of equity" in 1960 and 1961, involving many thousands of dollars in year end patronage rebates and member deposits, all of which were applied to his personal account. Oddo's Food Center, Inc., has never appeared in respondent's business records.

Oddo's Food Center, Inc., was incorporated September 30, 1959, and its certificate to do business was issued October 14, 1959, by the Secretary of State of Missouri. The corporation is capitalized for the sum of $1,000. Its given business address is 205 Pioneer Building, North Kansas City, Mo.

Turning to the account in question, as previously mentioned, it was opened in the name of Victor Oddo, Sr., and was always so carried on respondent's books. The first purchase on it is dated September 23, 1959. From time to time appellant made payments on it and these payments, some eighty-two in number, were made by appellant with Oddo's Food Center, Inc., corporation checks. These checks when received were posted by clerical employees of respondent. Each week appellant was mailed a statement of his account with respondent.

About September 30, 1961, Mr. Oddo and his wife sold the stock of Oddo's Food Center, Inc., to his brother-in-law Harry Nigro and his wife. The Nigros changed the corporation's name to "Ace Food Center" and used the 1051 Burlington address as their business location. They obtained a membership in respondent corporation about October, 1961. This membership was entirely

new and separate from that of Mr. Oddo's. Apparently, at a later date this latter corporation, Ace Food Center, became bankrupt.

■■ On this appeal appellant's sole point is that the trial court erred in rendering the mentioned judgment, contending that if a seller has actual knowledge that a buyer is incorporated and continues thereafter to do business with the buyer without taking any affirmative action to advise the buyer that the seller is dealing with him as an individual rather than a corporation, then the seller cannot recover against the individual on an open account, citing Martin v. Fewell, 79 Mo. 401.

One difficulty with appellant's contention is that it does not fit the facts of this case. The relationship between appellant and respondent was unique and was more than that of an ordinary debtor-creditor. Appellant became entitled to purchase and to obtain credit from respondent only by becoming a stockholder and member of respondent. This required him to be accepted as a member by respondent. To do this appellant made a personal membership application, submitted personal financial information and received certain stock, certain credit and the right to other benefits as an individual. As an individual and based on his individual financial situation and acceptance into membership of A. G. he was extended thousands of dollars in credit. In view of the undisputed circumstances surrounding the establishment of the open account it is clear that the undertaking to sell to Oddo was to sell to him as an individual member of A. G. on an open account.

■ The record before us does not disclose any agreement, actual or implied, by respondent (A. G.) to look to the Corporation Oddo's Food Center, Inc., instead of to Mr. Oddo individually merely upon such corporation coming into existence. At most the statement attributed to Mr. Fox by appellant (and which Fox did not recall making) is no more than Mr. Fox's suggestion

that if and when such a corporation is formed Mr. Oddo could then let him know and, impliedly, take the customary action to seek A. G. membership and credit for it. Nothing occurred thereafter that was sufficient either as a matter of fact or law to change the undertaking so as to make it one between A. G. and the corporation, Oddo's Food Center, Inc. instead of between A. G. and Oddo personally. The mere fact that respondent continued to do business with appellant after some of its personnel became aware of the formation of the corporation, Oddo's Food Center, Inc., in and of itself is insufficient to demonstrate that respondent was thereafter looking to the corporation rather than to Mr. Oddo for payment of the account.

■ While we experience some difficulty in understanding the precise legal theory upon which appellant relies as changing the undertaking and the account from one between A. G. and Mr. Oddo to one between A. G. and Oddo's Food Center, Inc., there is some suggestion that a novation occurred. It is fundamental that a novation exists only by reason of an agreement. To constitute a novation there must be three parties to the agreement; namely, the creditor, the original debtor and the third person who is to become the new debtor. They must all agree that the original debtor be released and that the third person be substituted in his stead. The intention of the obligor that there be a new agreement is not sufficient. The creditor must concur in this. Hicksville Handle Co. v. Herb, Mo. App., 226 S.W. 63; Hutcheson & Co. v. Providence-Washington Ins. Co. of Providence, R. I., Mo.App., 341 S.W.2d 142, 66 C.J.S. Novation § 11, page 691.

■ Here the creditor, A. G., did not actually or impliedly make any such agreement or give any such concurrence. In fact A. G. was not even asked to do so. Such a request presumably would have occasioned an application by Oddo's Food Center, Inc., for membership in A. G., and for the furnishing of information concerning its as-

sets and net worth so that A. G. could determine if it would grant membership and credit, and to what extent.

 Appellant's brief also suggests that at some instance in the dealings respondent impliedly contracted by estoppel with the corporation and must look to it alone. However, estoppel is an affirmative defense and as such must be pleaded. This was not done. See Civil Rule 55.10, V.A.M.R. Rather, the defense pleaded in the answer was that the corporation "Oddo's Food Center, Inc.," was a member of Associated Wholesale Grocers, Inc., and that if there was any money owing plaintiff "as a result of the business done with plaintiff and said corporation that this indebtedness is the debt of the corporation and not of the defendant individually." Even more fundamental, as this court stated in National Match Co. v. Empire Storage & Ice Co., 227 Mo.App. 1115, 58 S.W.2d 797, 799, "To constitute estoppel in pais, three things must occur: First, an admission, statement or act inconsistent with the claim afterwards asserted and sued on; second, action by the other party on the faith of such admission, statement or act; and, third, injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement or act." As we view the facts none of these three elements necessary to constitute estoppel is present in this case.

The cited case of Martin v. Fewell, supra, is distinguishable and not persuasive of appellant's contentions. In the Martin case, upon facts quite different from those before us, it was stated that where partners have dealt as such with a seller, and after incorporation, continue to deal as before, having their bills paid the same way, without giving any notice of their altered condition, they will continue to be liable as partners, unless the seller has knowledge thereof derived from some other source. Obviously, if the creditor knows the partnership no longer exists but has become a corporation it is only common sense to believe any fur-

ther credit that is extended is to the corporation. Cf. Darling v. Buddy, 318 Mo. 784, 1 S.W.2d 163, 170(15), 58 A.L.R. 493; Armstrong v. Henley, 182 Mo.App. 320, 170 S.W. 402(1).

As a result of our own independent examination and review of the evidence and law we are convinced the circuit court's judgment is correct. The judgment is affirmed.

All concur.

BROADDUS, J., not participating.