STATE OF MISSOURI at the relation of THE ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA, a Corporation, Petitioner, v. HOPKINS B. SHAIN, FRANCIS H. TRIMBLE and EWING C. BLAND, Judges of the Kansas City Court of Appeals.—98 S. W. (2d) 597.

Division Two, November 17, 1936.

904

*Montgomery, Martin & Montgomery* for petitioner.

*Fred F. Wesner, F. M. Ross* and *E. W. Jones* for respondents.

WESTHUES, C.—Relator seeks to quash the opinion and record of the Kansas City Court of Appeals in the case of Jackson v. Order of United Commercial Travelers of America, reported in 89 S. W. (2d) 536. It will be noted that Judge BLAND dissented. Relator alleges that the opinion of respondents is in conflict with the controlling opinions of this court. It is asserted that respondents' opinion, in holding that there was sufficient evidence of duress to avoid a release in compromising a claim, is in conflict with opinions of this court in the cases of: McCormick v. City of St. Louis, 166 Mo. 315, l. c. 332, 65 S. W. 1038; Wood v. Kansas City Home Telephone Co., 223 Mo. 537, l. c. 557, 123 S. W. 6, l. c. 12; McCoy v. James T. McMahon Construction Company (Mo.), 216 S. W. 770. It is also asserted that respondents' opinion, holding that the release in question might be avoided by Jackson without tendering back the consideration received, is in conflict with the following decisions of this court: Wood v. Kansas City Home Telephone Co., 223 Mo. 537, 123 S. W. 6; McCoy v. James B. McMahon Construction Co. (Mo.), 216 S. W. 770; Bushnell v. Loomis, 234 Mo. l. c. 381, 382, 137 S. W. 257, 36 L. R. A. (N. S.) 1029.

Jackson, the plaintiff in that case, sued relator, insurance company, on a policy of insurance covering total disability caused by accident. The issues tried in the trial court, insofar as necessary for the purpose of this case, were stated by the Court of Appeals as follows:

"The plaintiff duly avers compliance with all terms of the contract and makes claim as entitled to benefits of $25 per week for a term of 104 weeks by reason of bodily injury as a result of and effected through external, violent, and accidental means occasioned alone and independent of all other causes.

"The defendant, answering plaintiff's petition, pleaded a full settlement of all claims arising under the policy and pleaded payment of $600 under said settlement and pleaded a full acceptance and full acquittance on the part of plaintiff.

"Defendant further makes claim that plaintiff's condition is due to cerebral hemorrhage and not to accident alone, and sets forth provisions of the Constitution and by-laws effective on the date of the alleged accident, to-wit, May 1, 1933, which are alleged as sustain-

ing defendant's claim of nonliability. Defendant also denies liability based upon failure of notice.

"The plaintiff, in reply, makes claim that defendant is estopped, by reason of its conduct in investigating and making partial payment, to plead the provision of by-laws and Constitution concerning written notice of the accident forming basis for plaintiff's claim. Plaintiff further denies allegations as to compromise settlement and acquittance and pleaded further that if any instrument purporting to a compromise settlement did exist, that same were wrongfully procured by fraud, misrepresentation, and against the will and voluntary consent of plaintiff by reason of threats and deceitful representations made by defendant and its agents.

"In other words, the elements of modern duress are pleaded and the reply is subscribed and sworn to by plaintiff.

"Trial was had before a jury. Verdict was for the plaintiff in the sum of $2000. Judgment was entered in conformity with the verdict, and the defendant duly appealed."

The opinion, dealing with the questions before us, contains the following conclusions of fact and law:

"There is evidence shown to the effect that plaintiff did not fully regain control of his mental faculties for a period of over thirty days after the accident. We conclude that the evidence, when taken in its most favorable aspect to him, is sufficient to sustain plaintiff's position on the question of notice. . . .

"We conclude that the evidence in this case raises a question of fact as to whether the plaintiff's injury was *caused* or *contributed to* by cerebral hemorrhage.

"We next give consideration to subtopic 3, supra. There is no doubt but what if liability attached to defendant it stood liable for $2600.

"The defendant's statement to the effect that a genuine bona fide dispute existed does not correspond to the agent's action in the premises nor to the words used by him. Defendant's position is to the effect that liability is denied. The record is replete with actions and conduct on the part of defendant's agent, from which it may be inferred that he did consider the company liable and was disturbing the quiet of a sick and weakened man in an endeavor to get the liability reduced.

"We conclude that what was said in Harms v. Fidelity & Casualty Co., 172 Mo. App. 241, 157 S. W. 1046, has application herein.

"As to the valuable consideration given and accepted and as to the question of restoration of *statu quo* as prerequisite to bringing suit, the general doctrine urged by defendant concerning necessity of restoring to *statu quo*, where a voidable contract has been obtained by fraud, is an accredited doctrine in Missouri and is well defined in

Metropolitan Paving Co. v. Brown-Crummer Inv. Co., 309 Mo. 638, 274 S. W. 815, 1. c. 819.

"A different rule than the above comes into consideration, where fraud or duress enters into procurement of a release. In such a case the tender back of the consideration is not necessary. [Hannah v. Butts, 222 Mo. App. 1098, 14 S. W. (2d) 31.]

"To a full consideration of the above question, a consideration of defendant's subtopic four is necessary.

"The plaintiff on the issue of compromise settlement makes claim of duress.

"It appears that defendant's agent secured what defendant claims as a compromise settlement, whereby it paid the plaintiff $600, and wherein plaintiff executed documents in full acquittance of all claims and received the money and has made no tender of same back to defendant.

"The common-law doctrine of duress is in force in Missouri as modified by the decisions of our courts, and, as so modified, duress includes any degree of constraint which is sufficient to affect the mind of a person of ordinary firmness, and includes the condition of the mind as affected by the wrongful conduct of another which renders the person incompetent to contract with the exercise of his will power.

"As the question now exists, duress is a question of fact in each particular case. [C. J., vol. 13, page 396, par. 310; Wood v. Kansas City Home Telephone Co., 223 Mo. 537, 123 S. W. 6.]

"There is evidence in this case to the effect that defendant's agent visited plaintiff, while suffering from his injury, and was weak, sick, and nervous, and that defendant's agent disturbed plaintiff and told plaintiff that he had not given notice in the required time and was out. Further, that the agent told plaintiff that he had no claim and could not find a jury in Missouri that would give him anything.

"In the course of plaintiff's testimony, the following questions are shown as asked and answered:

" 'Q. What did he say he would pay you? A. He told me he would pay me six hundred dollars.

" 'Q. What did he say about that? A. He said I could either take six hundred dollars or nothing at all rather than go in court. He said I didn't have anything in court to fight the case and I told him if I was able I would fight the case but I was there sick.

" 'Q. What else did he tell you? A. I don't recall what he did say but he told me he would be in favor of six hundred dollars if I would sign the release and I was there sick and broke and I signed the release because I owed for medical attention and didn't have any money and owed by sister for my care.'

"We conclude there was sufficient testimony to raise an issue of duress.

"In defendant's topic 5, the question of tender back is directly presented. This topic is so closely allied with the previous topics discussed that what is therein said applies and enters into our conclusion as to the point presented in said topic.

"Based upon our premises and conclusions above, we conclude that a return of the $600 was not a prerequisite to plaintiff bringing this action.

"In the briefs of the parties herein, questions of waiver and estoppel are presented. As we have reached and expressed the conclusions that there is evidence of conditions that excused plaintiff for the delay of notice and proofs, the questions of estoppel and waiver are not material to the issues before us.

"It is clearly shown by the record in this case that the plaintiff presented his case upon the theory that cerebral hemorrhage in no way was the cause of and in no way contributed to the accident causing plaintiff's injuries. On the other hand, the defendant is shown to have presented its defense upon the theory that cerebral hemorrhage was either the direct cause or was a contributing cause of the accident and injury.

"Further than the above, the defendant has advanced a theory, based upon its interpretation of the contract, to the effect that, regardless of how caused, no recovery could be had under the contract if a cerebral hemorrhage resulted.

"As to the above, we conclude that defendant is inconsistent in presenting as a defense that there is no liability, by reason of the fact that cerebral hemorrhage caused the accident, and if failing in that, to deny liability because cerebral hemorrhage was one of the results of the accident.

"The language of the contract presents ambiguity in that in the coverage clause it insures against results and in later paragraphs or by-laws apparently attempts to restrict its liability to conditions, although caused by the very means set forth in the coverage clause.

"In order to avoid repugnance, we have concluded that the restrictions are restrictions directed at causes for or the occasioning of the accident, and not as to the effect thereof.

"As is frequently the case in insurance contracts, wherein the restricting clauses compose the greater volume of the contract. the case at bar presents perplexing questions. Under such circumstances, it becomes our duty to harmonize, if possible.

"In addition to the question of interpretation, discussed above, there is presented another phase. We conclude that there is presented an issue of fact by the evidence herein, wherein the jury could have found for the plaintiff upon the theory that his total disability was due to injury other than cerebral hemorrhage.

"Based upon the foregoing, we conclude that there was an issue of fact presented for the jury and that it was not error to refuse the peremptory instruction offered by defendant."

It is obvious, as disclosed by the opinion, that relator was denying liability under the policy upon two grounds: First, that Jackson, the insured, did not give notice of the alleged injury within the time required by the terms of the policy; second, that Jackson's condition was due to a cerebral hemorrhage, and not alone due to an accident, and therefore not covered by the policy.

The Court of Appeals held that upon both of these questions evidence was introduced so as to make an issue fact for a jury. Upon the first it was conceded that timely notice was not given by Jackson to the insurance company, but Jackson contended that he was excused because of his condition. There existed, therefore, a bona fide dispute between Jackson and relator as a basis for a compromise settlement. If, therefore, there was a compromise and a release by Jackson it was supported by a valuable consideration. The attorneys for Jackson, representing respondents here, urge that plaintiff had a liquidated claim, and therefore a partial payment thereof by relator, under the release, was not a consideration and the release was void. There is nothing in the opinion to sustain this claim. It is apparent and conceded that Jackson failed to notify relator within the time required by the policy. Such failure avoided liability. The policy provided:

"The furnishing of the notices, preliminary proofs or final proofs, as hereinbefore provided is a condition precedent to recovery and any failure to give or furnish the notices, preliminary proofs or final proofs, as hereinbefore required, each within the time limit therefor, shall act as a forfeiture of any and all claims against the Order and such claim shall be forfeited by such failure."

The opinion contains a statement, made by the writer thereof, that, "The record is replete with actions and conduct on the part of defendant's agent, from which it may be inferred that he did consider the company liable and was disturbing the quiet of a sick and weakened man in an endeavor to get the liability reduced."

The opinion does not set forth any fact from which it could be inferred that the agent of relator considered the company liable. Jackson had the burden of proof that he was physically unable to notify the company as required, and respondents' opinion states that under the evidence it was a question for the jury to say whether Jackson was excused on account of his condition.

In Wood v. Kansas City Home Tel. Co., 223 Mo. 537, 123 S. W. 6, 1. c. 15 (5), this court approved the following language taken from Reilly v. Chouquette, 18 Mo. 1. c. 220:

"When a right is disputed and a compromise ensues, that com-

promise will not be disturbed, should it turn out afterwards that one of the parties had no right in law. Such a principle would overthrow all compromises. The compromise of a doubtful claim is a good consideration for a contract."

It is apparent, therefore, from the statement of facts made by the Court of Appeals, that the settlement between relator and Jackson was supported by a valuable consideration. The question now to be considered is whether the holding, by the Court of Appeals, that the evidence in support of the claim of duress was sufficient to make an issue for the jury, is in conflict with controlling decisions of this court. We are of the opinion that there is a conflict. The evidence set forth in respondents' opinion in support of the duress does not reflect any wrongful act on part of the agent of the company in obtaining the release. All it shows is that the agent in dealing with Jackson represented his employer, the insurance company. He did not threaten Jackson with any criminal or even a civil suit. Nor did he make any other threats except to inform Jackson that if he did not accept the $600 offered he would not get anything. Jackson did not testify that he signed the release under duress. Respondents' opinion quotes Jackson's evidence upon this point as follows:

"Q. What else did he tell you? A. I don't recall what he did say but he told me he would be in favor of $600.00 if I would sign the release and I was then sick and broke, *I signed the release because I owed for medical attention and didn't have any money and owed my sister for my care.*" (Italics ours.)

Under the rulings of this court that evidence falls far short of supporting a charge of duress. Even of the so-called "modern duress." In the case of McCormick v. St. Louis, 166 Mo. 315, 65 S. W. 1038, l. c. 1043, 1044, this court said:

"The thing that forced plaintiff to accept the terms of settlement offered by the defendant in this case was not in any wise the result of the action or conduct of defendant or any of its agents, but, as shown by plaintiff himself, was the result of circumstances and conditions over which the defendant city had no control, and with which it had no concern or connection,—'his financial necessities.' There is nothing in the claim, from a legal point of view, that plaintiff was forced to accept the terms of defendant's offer, and to receipt in full against all claims for work and labor done and performed under the terms of their several contracts. It was his free act, done in the full light of all the facts in the premises, and in the knowledge of the effect of his act."

And in Wood v. Telephone Co., 223 Mo. 537, 123 S. W. 6, l. c. 12, the following language, taken from 9 Cyc., page 450, was approved:

"Duress then, according to this class of cases, includes that condition of mind produced by the wrongful conduct of another, render-

ing a person incompetent to contract with the exercise of his free will power, whether formerly relievable at law on the ground of duress or in equity on the ground of wrongful compulsion.''

Note that it says ''produced by the wrongful conduct of another.'' The statement of facts in respondents' opinion does not even hint of any wrongful conduct on the part of relator's agent in obtaining the release from Jackson. In a recent case, Breneman v. The Laundry, 87 S. W. (2d) 429, l. c. 431 (1), we held evidence of a more serious nature, upon the issue of duress, insufficient to sustain the duress charge. A case cited in respondents' brief, Mississippi Valley Trust Co. v. Begley, 298 Mo. 684, 252 S. W. 76, was there approved. In the Begley case there was a threat of exposure of forgery and criminal prosecution. The court correctly held that the evidence was sufficient to sustain the duress charge, but the court in that case approved a doctrine with which respondents' opinion is in conflict. At page 79, paragraph 3, of 252 S. W., the court said:

''There is nothing in Wood v. Telephone Co., 223 Mo. 537, 123 S. W. 6, in conflict with the doctrine above promulgated. In that case it was ruled that there was no duress, because the contract in suit was made under threat of an ordinary civil suit, which neither directly nor indirectly exposed the party or his near relatives to any deep disgrace or prosecution for crime or other distressing personal or financial circumstances, which had any tendency to deprive the party entering into the compromise in that case of that free quality of mind essential to the making of a contract. On page 565, of 223 Mo., on page 13 of 123 S. W. the court said the claim of duress in that case was 'womanish.' Judge GRAVES cites Morse v. Woodsworth, 155 Mass. l. c. 250, 29 N. E. 528, where the court says:

'' 'It has often been held that threats of civil suit, and of ordinary proceedings against property are not enough, because ordinary persons do not cease to act voluntarily on account of such threats.' ''

██ What we have said would be sufficient to dispose of this case if it were here on appeal, because our ruling means that the trial court should have sustained a demurrer to the evidence because the release pleaded was a bar to Jackson's cause of action. But this is a certiorari proceeding and we are dealing with a question of conflict. We must, therefore, also dispose of the other question presented, that is, does the opinion of respondents conflict with controlling decisions of this court, wherein it is held that the plaintiff, Jackson, was not required to tender back the consideration obtained for the release? We think there is a conflict. It is not a difficult question if we keep in mind that the release was not void but only voidable. In the case of McCoy v. James T. McMahon Const. Co., 216 S. W. 770, l. c. 771, 772 (1-5) (6), this court had this question before it. The rule was

so well stated in that case that a quotation therefrom will be sufficient. Division One of this court said:

"Counsel contend this discloses the release was signed· 'under threats and coercion,' and 'is absolutely void, and gives the defendant no rights whatever before suit brought or afterward.'

"(a) Duress might be such as to render a settlement void at law. The actual application of force to compel the act of signing a release would constitute an instance. Ordinarily duress renders a contract voidable, not void, and the same duty arises to put the other party *in statu quo* before avoiding the contract as exists in cases of fraud in the treaty. [Wood v. Telephone Co., 223 Mo. l. c. 563, 564, 123 S. W. 6; Bushnell v. Loomis, 234 Mo. l. c. 381, 382, 137 S. W. 257, 36 L. R. A. (N. S.) 1029.] . . .

"(b) Upon the same evidence appellant contends the release was fraudulently procured, and therefore no tender was necessary. Before the rule requiring tender before suit becomes applicable there must be a release. If the instrument or agreement relied upon never existed in fact or is void at law, no tender can be required. Fraud in the *factum* renders the contract void, and no tender is necessary. Fraud in the treaty renders it merely voidable, and, absent some other ground dispensing with the rule, tender is prerequisite to an action on the original cause. [Malkmus v. Cement Co., 150 Mo. App. l. c. 453, 454, 131 S. W. 148; Putnam v. Boyer, 173 Mo. App. l. c. 398, 158 S. W. 861 et seq.; Althoff v. Transit Co., 204 Mo. l. c. 170, 102 S. W. 642; Och v. Ry., 130 Mo. l. c. 46 et seq., l. c. 69, 31 S. W. 962, 36 L. R. A. 442 et seq.; Wessel v. Waltke & Co., 196 Mo. App. l. c. 592, 190 S. W. 628 et·seq.; Reid v. Railroad, 187 S. W. l. c. 17.] The testimony appellant relies upon has no tendency to prove the release was signed in ignorance of its contents, fraudulently induced by respondent."

This language is applicable to the case at bar.

The record and opinion of the Court of Appeals in question will, therefore, be quashed. It is so ordered. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.