GEORGE H. FIELD v. THE NATIONAL CITY BANK OF ST. LOUIS, a Corporation; E. A. SCHMID and ARTHUR ANDERSON, Defendants-Appellants, W. M. STONE, Defendant.—121 S. W. (2d) 769.

Division One, November 19, 1938.

*Bryan, Williams, Cave & McPheeters* and *Jeffries, Simpson & Plummer* for appellants.

*Orla M. Hill* and *A. G. Schumacher* for respondent.

HYDE, C.—This case, recently reassigned to the writer, is an action for damages (first count on which case was submitted) for value of certain property claimed to have been wrongfully obtained from plaintiff by defendants. After the court sustained a demurrer to the evidence as to the second count for malicious prosecution, plaintiff took an involuntary nonsuit but has not appealed. Plaintiff obtained verdict and judgment for $24,240 on the first count against all defendants, except Stone (whose demurrer to the evidence was sustained), and they have appealed.

Plaintiff raised the question of the sufficiency of defendants' abstract of the record and moved for dismissal. An opinion was adopted, at our May, 1937, term, dismissing the appeal, which noted that defendants made "an assignment that the court erred in refusing a demurrer to the evidence at the close of the whole case;" and held that the appeal could not be considered because all of the evidence

was not set out in proper form. Thereafter, a motion for rehearing was sustained and, after permitting defendants to file the original bill of exceptions for inspection, the case was reargued on the merits at the January, 1938, term. We have decided after comparison of the original bill with defendants' abstract that, while it is not sufficient for a review on the assignment of refusing the demurrer to the evidence, it is sufficient under our rules 6 and 13 for review of the trial court's action in giving instructions. Accordingly our review will be limited to a determination of the correctness of instructions submitting the case.

Plaintiff's petition (first count) alleged that on January 1, 1926, plaintiff was the owner of 1848½ shares of no par value stock of the Republic Finance Corporation, which corporation was engaged in buying and selling negotiable instruments and securities, and in lending money; that the reasonable market value of this stock was $20 per share; that plaintiff also owned 12 lots in Wood River, Illinois, which were of the reasonable market value of $6600; that plaintiff owned an equity in a lot in St. Louis, Missouri, the reasonable value of this equity being $1000; and that the defendant, National City Bank, at all times concerned held notes and collateral notes of the Republic Finance Corporation aggregating the approximate sum of $80,000. Plaintiff further alleged that, prior to the transactions upon which he bases his suit, he was president of the Republic Finance Corporation and drew a salary of $7200 per year; that on January 1, 1926, there was a suit pending against the Republic Finance Corporation wherein one C. J. Gonterman sought to recover more than $100,000 for alleged usurious interest; that on May 12, 1926, the defendants and the directors of the Republic Finance Corporation fraudulently conspired together for the purpose of unlawfully acquiring control of the assets of the Republic Finance Corporation, and in order to deprive plaintiff of his position as president, and for the purpose of wrongfully depriving plaintiff of his property for the use and benefit of the defendants; that in pursuance of said conspiracy, defendants Schmid (vice-president of the City National Bank) and Anderson (who was alleged to be a representative of the Bank) called at the office of the Republic Finance Corporation when plaintiff and the directors were engaged in holding a directors' meeting, and falsely represented to plaintiff that his continuance as president and director of the Republic Finance Corporation, during the Gonterman litigation, would not be for the best interest of the corporation; that Schmid and Anderson further represented to plaintiff that upon receipt of his resignation as president and director, the board would fill the vacancy by electing Anderson director and president; that defendants further falsely represented that as soon as the litigation was ended Anderson would resign as president and

director, and plaintiff would again be elected director and president; that Schmid falsely represented that said bank was demanding that plaintiff resign as president and director of the Republic Finance Corporation, and that Anderson be elected director and president during said litigation, so that Anderson would be in a position to protect the bank; and that he, plaintiff, relied upon these representations, was ignorant of the alleged. conspiracy, resigned as president and director of the Republic Finance Corporation, and the board elected Anderson to fill the vacancy on the board and as president.

Plaintiff further alleged that on May. 22, 1926, Schmid and Anderson, in furtherance of the conspiracy, represented to plaintiff that in their opinion, the interest of the Republic Finance Corporation could be best served, and that the National City Bank insisted that plaintiff grant to Anderson the sole authority to vote plaintiff's stock until the litigation was terminated, and that plaintiff, still ignorant of the conspiracy and still relying upon the truth of the representations, entered into a written contract with Anderson whereby plaintiff endorsed and delivered to Anderson all of his stock certificates evidencing his ownership of the 1848½ shares, and granted to Anderson the sole authority to vote this stock. Plaintiff further alleged that on May 26, 1926, Schmid and Anderson, in furtherance of the conspiracy, represented to plaintiff "that the defendant National City Bank was afraid *that plaintiff might be indebted,* to the Republic Finance Corporation, and was afraid *that such indebtedness,* unless protected, *might depreciate the chance of the bank to recover* the full amount of the debt owing to it by the said Republic Finance Corporation;" that Schmid and Anderson then persuaded plaintiff to engage in a plan to protect the Republic Finance Corporation *"against any such indebtedness as might be found to exist;"* that plaintiff *"well knowing that he was not indebted to said Corporation in any sum whatever,* but relying upon the good faith of Schmid and Anderson and upon the representations made by them as aforesaid as agents of the National City Bank and desiring to pacify said defendant bank and retain its good will and credit standing of said Republic Finance Corporation, did enter into a written agreement with Anderson and the National City Bank, whereby plaintiff delivered to said defendant Anderson, as president of the Republic Finance Corporation," a note and deed of trust in the sum of $2,500, plaintiff's own note in the sum of $1000 and two notes secured by deeds of trust, each in the sum of $2000, "in consideration of which and in accordance with said written agreement, it was agreed that said Republic Finance Corporation would credit the sum of $5,100.00 to the account of plaintiff *for the purpose of protecting any indebtedness that might be found to exist in favor of the Republic Finance Corporation and against plaintiff."*

Plaintiff further alleged that on May 26, 1926, Schmid and Anderson and the bank *"knew that plaintiff was not indebted to said Republic Finance Corporation in any sum whatever,"* and knew that the representations concerning such indebtedness were false; that the purpose of such representations was in furtherance of the conspiracy to deprive plaintiff of his property so that defendants might have the same; that the defendants, in furtherance of said conspiracy, falsely, fraudulently, willfully and maliciously charged plaintiff with the crime of embezzlement of the property of the Republic Finance Corporation; that in further pursuance of said conspiracy, defendants caused plaintiff to be indicted, although defendants knew that plaintiff had not committed the crime of embezzlement or any other crime; that in furtherance of the conspiracy the defendants, having charge of the books and records of the Republic Finance Corporation, have denied plaintiff access thereto; that the defendants, in conjunction with the directors of the Republic Finance Corporation, and in furtherance of the conspiracy, *"willfully, maliciously and fraudulently, modified, altered and perverted the books and records of said Corporation so as to falsely show the accounts of said Corporation with plaintiff;"* and that on January 29, 1927, Schmid and Anderson, with knowledge of plaintiff's innocence, in furtherance of the conspiracy and in conjunction with the directors of the Republic Finance Corporation, represented to plaintiff that if he would convey to the Republic Finance Corporation all his property, to-wit: His 1848½ shares of stock in the Republic Finance Corporation, his 12 lots in Wood River, Illinois, his equity in the lot in St. Louis County, his $5100 credit on the books of the Republic Finance Corporation, and give in addition thereto, his note for $1000, then defendants would cause the indictment for embezzlement to be *nolle prossed.*

Plaintiff further alleges that on January 29, 1927, and at the time of the proposed *nolle prosse* of the indictment, the defendants were still acting in the furtherance of the alleged conspiracy; "that all of said defendants *knew that plaintiff was not guilty of the crime* charged in the indictment, or any crime, and also *knew that plaintiff was not indebted to the Republic Finance Corporation nor to any of the defendants;"* that notwithstanding *"the total absence of any guilt or indebtedness of plaintiff* and defendants' knowledge of plaintiff's innocence," the defendants, in furtherance of the conspiracy, "coerced the plaintiff to part with and convey his said property to the Republic Finance Corporation *wholly without consideration;"* that the only consideration was the promise to have the indictment *nolle prossed;* that defendants, at that time, informed and threatened plaintiff that, if he did not part with and convey his property, defendants would urge and assist in the prosecution of the indictment with all the power and influence at their command; that defendants

were possessed of great financial strength and were able to and did command great influence; and that plaintiff believed that defendants would. use their financial strength and influence to wrongfully, maliciously and .fraudulently convict plaintiff of the crime of. embezzlement as charged in the indictment. Plaintiff further alleged that prior to January 29, 1927, he had been arrested on a warrant based on the indictment and was under bond to appear on a date certain; that, being actuated by fear and by reason of threats and duress imposed upon him by the defendants, he was subjected to great .nervous strain and impairment of mind and was uncertain as to his legal rights; and that because of duress and fear, he conveyed to the Republic Finance Corporation, property, the aggregate market value of which was $50,670, "all *without lawful consideration* and for the sole purpose of causing the defendants to discontinue their coercion and duress and to cause the *nolle prosse* of the indictment." Plaintiff further alleged that all assets of the Finance. Corporation, "including the property of plaintiff as aforesaid," have been sold, reduced to cash and paid to defendant Bank "in purported liquidation of notes held by said bank against said Republic Finance Corporation;" that the property has not been returned to him and that no legal consideration has .been paid to him for said property; and that he has made demands upon defendants to pay him for said property, but they have refused to pay.

The individual defendants filed an answer containing a general denial, which further specifically denied that they prosecuted plaintiff for embezzlement but alleged that, after the facts were fully presented to the proper officials of the city of St. Louis by a committee of stockholders of the Republic Finance Corporation and presented by such officials to a grand jury, there was an indictment returned against plaintiff charging him with embezzlement. They further alleged "that neither they nor any of them nor the defendant National City Bank of St. Louis at any time received from plaintiff, George H. Field, any of the property or assets referred to in said petition which plaintiff in said petition claims belonged to him, and that whatever property, assets or effects were disposed of by him, or lost, as claimed in his petition, *were delivered by him to the Republic Finance Corporation on or prior to January 29, 1927*; that on said 29th day of January, 1927, plaintiff, George H. Field, *for good and sufficient consideration,* duly executed and delivered to said Republic Finance Corporation a written instrument of said date denominated 'Mutual Release;' " that this release (which is set out in part) settled plaintiff's claim for the property sued for; and that "by virtue of said release plaintiff, George H. Field, fully and forever released the said Republic Finance Corporation from every claim, demand or damage of any nature, 'character and kind whatsoever which he

might then have against the said Republic Finance Corporation, including all claims for damages against said Republic Finance Corporation on account of his delivery to said corporation of the property and assets claimed to belong to plaintiff.'' This release (as alleged and proved) stated that ''neither party . . . admit, in any manner, the claims of the other party,'' and recited as part of its consideration the transfer of the stock, the $1000 note executed by plaintiff, and the conveyance of the land, described therein, being property also described in plaintiff's petition. It also released all claims which the Finance Corporation might have against plaintiff. A similar answer was filed for the National City Bank, and a counterclaim was also stated therein based upon a guaranty, of the indebtedness of the Republic Finance Corporation to the Bank, signed by plaintiff. The amount of this counterclaim was greater than the amount of plaintiff's judgment. However, this counterclaim was stricken out on plaintiff's motion, and no exception to such action is shown.

Plaintiff's replies to both answers contained a general denial but admitted signing the release set up by defendants. It was further alleged therein that this release was not binding upon plaintiff because ''his signature thereto, was obtained from plaintiff by defendants, unlawfully acting together and in conspiracy with the officers and directors of said Republic Finance Corporation, through fraud, false pretenses, threats and coercion practiced and perpetrated upon plaintiff by defendants herein, acting together and in conspiracy with the officers and directors of said Republic Finance Corporation, and under the fear of the unlawful and malicious prosecution of plaintiff on a false charge of embezzlement, all as is fully set out and pleaded by plaintiff in his amended petition.''

Plaintiff denied any indebtedness to the Finance Corporation and his testimony was to the effect that charges on the corporation's books tending to show any indebtedness were false. Defendants' evidence showed an audit of the affairs of the Finance Corporation, completed in June, 1926, which with the auditor's testimony, and the testimony of officers of the Finance Corporation, was substantial evidence to show that plaintiff did owe the corporation more than the value of the property delivered by him to the corporation. Thus, regardless of the validity of the release, it appears that there was a most sharply contested vital fact issue, which might be determinative of the whole case, as to whether or not plaintiff owed the Finance Corporation as much or more than the value of the property he delivered to it. Plaintiff recognized this as an essential element of his case (which it certainly was) by stating and restating in his petition that he was not indebted to it in any amount, as shown by the italicized quoted portions thereof, hereinabove set out.

 In this situation, plaintiff's Instruction No. 1 authorized a verdict, on the theory of either fraud or duress, upon the following findings (omitting the first part concerning the description of the property, the litigation pending, and the relation of the parties, hereinabove set out, as alleged in the petition), to-wit:

"And if you further find and believe from the evidence that the defendants, or either of them, acted in furtherance of said conspiracy, if you find there was a conspiracy, and did falsely and fraudulently represent to plaintiff that his continuance as president and director of said corporation during the litigation in which said corporation was then involved would not be for the best interests of said corporation, and did then and there further represent to plaintiff that upon receipt of plaintiff's resignation as president and director of said corporation, the Board of Directors would fill the vacancy thereby created by electing defendant Arthur Anderson as president and director of said corporation, and did then and there falsely and fraudulently represent to plaintiff that as soon as the litigation aforesaid had been ended the said Arthur Anderson would then resign as president and director of said corporation and that the remaining directors would again elect this plaintiff as president and director of said corporation, and that said Arthur Anderson (acting in furtherance of said conspiracy, if you find there was a conspiracy) promised plaintiff that in the event of the resignation of plaintiff and the election of said Anderson, then at the end of said litigation said Anderson would resign in favor of the reelection of plaintiff as director and president of said corporation; and if you further find that defendant Schmid, acting for defendant, The National City Bank, in furtherance of a confederation and conspiracy (if you find there was a confederation and conspiracy) falsely and fraudulently informed and represented to plaintiff that defendant, The National City Bank, as holders of obligations of the Republic Finance Corporation, were demanding that plaintiff resign and that defendant Anderson be elected as president of said corporation during aforesaid litigation in order that said Anderson be put in position to protect said National City Bank, and did promise plaintiff that he would be reelected president and director of said corporation when said litigation was ended, and that such representations were false, if you so find; and if you further find and believe from the evidence that the plaintiff believed and relied upon such false representations, if any, and that the plaintiff was induced by such false representations, if any, to part with the possession of his said property, if any;

"Or, if you find and believe from the evidence that the defendants, or either of them, knew at the times mentioned in the evidence that the plaintiff, George H. Field, was not guilty of the crime of embezzlement, or, had good reason to believe that said plaintiff was not

so guilty, if you so find; and if you further find and believe from the evidence that the defendants, notwithstanding such knowledge, if you find they or either of them had such knowledge, acting in furtherance of such conspiracy and confederation, if any, did represent to plaintiff that if he would part with and convey his property, if any, to the Republic Finance Corporation, the defendants, or either of them, would cause an indictment then pending against plaintiff to be dismissed or *nolle prossed*, and that if plaintiff did not part with and convey his property to said Republic Finance Corporation the defendants would employ one Pat Cullen to aid in the prosecution of plaintiff; and if you further find and believe from the evidence that the plaintiff believed and relied upon the representations so made, if you find they were made, and believed that he (the plaintiff) would be wrongfully prosecuted and might be wrongully convicted if he did not convey his property, if any; and if you further find and believe from the evidence that the plaintiff, Field, through fear and duress, induced by said acts of the defendants, or either of them, if you so find, parted with and conveyed his property, if any, to said Republic Finance Corporation, and that said property, if any, has not been returned to plaintiff, then your verdict must be for the plaintiff.''

The court also gave plaintiff's Instruction No. 6, which was, as follows:

''The Court instructs the jury that if you find and believe from the evidence that the defendants, or any two or more of them, entered into a conspiracy for any of the purposes enumerated in other instructions in this case; and if you further find and believe from the evidence that the defendants, or either of them, acted in pursuance of such conspiracy, if any, and that such acts were the direct or proximate cause of a loss of property by the plaintiff, if you so find, then you are further instructed that even though you may further find that the plaintiff was indebted to the Republic Finance Corporation, the fact of such indebtedness, if any, standing alone would not be a defense to the plaintiff's cause in this case.''

Keeping in mind that the malicious prosecution count went out of the case, and that the submission was solely on the first count for damages for ''the reasonable market value of property,'' which plaintiff claimed was wrongfully taken from him without consideration, it is obvious that the theory, submitted by these instructions, was completely erroneous. ''One suffers no damage where he is fraudulently induced to do something which he is under legal obligation to do such as payment of a just debt.'' [12 R. C. L. 393, sec. 141; 26 C. J. 1170, sec. 78; 20 Am. Cas. 179 notes; Stevens v. Odlin, 109 Me. 417; see also Thompson v. Newell, 118 Mo. App. 405, 94 S. W. 557; Bell v. Butte Inv. Co. (Mo.), 250 S. W. 381, and cases cited.] Likewise, ''in order to recover moneys paid under duress, it must be shown not

only that there was duress, but also that the demand . . . was illegal, unjust or oppressive, and that it is against equity and good conscience for the payee to retain the money; , . . if any sum was due from the payor, he may recover only the excess.'' [48 C. J. 742, sec. 293.] ''One cannot recover back money paid under compulsion if it is just what he ought to have paid voluntarily.'' [48 C. J. 753, sec. 307; see also 21 R. C. L. 153, sec. 178; Dale v. Simon (Tex.), 248 S. W. 703, l. c. 709, affirmed 267 S. W. 467; Missouri-Lincoln Trust Co. v. St. Louis Third National Bank, 154 Mo. App. 89, 133 S. W. 357; Slover v. Rock, 96 Mo. App. 335, 70 S. W. 268.] Not only did plaintiff's main Instruction No. 1 fail to require a finding that plaintiff was not indebted to the Republic Finance Corporation, but his Instruction No. 6 affirmatively stated that, even if such indebtedness existed, it ''would not be a defense.'' Under the above authorities, and as a matter of right and reason, any indebtedness would be a defense *pro tanto,* while an indebtedness greater than the value of the property received by the Finance Corporation from plaintiff would ''standing alone'' be a complete defense to plaintiff's count one.

Plaintiff's theory was that no debt to the Finance Corporation could be considered in this action because the Finance Corporation is not a defendant. The fallacy of that argument is that, if plaintiff's property was delivered to and received by the Finance Corporation in payment of a just debt due from plaintiff equal to or greater than the value of such property, then plaintiff has already received full value for his property and is not entitled to recover any more therefor from anyone. Damage from the transaction was an essential element of plaintiff's case and his instructions must at least require a finding of facts which would show that he was damaged. Since this case must be retried, we deem it advisable to point out that most of the misrepresentations submitted in Instruction No. 1 are either promissory or mere matters of opinion rather than representations concerning existing facts. [See Jack v. O'Meara, 341 Mo. 419, 107 S. W. (2d) 782; Patzman v. Howey, 340 Mo. 11, 100 S. W. (2d) 851; Reed v. Cooke, 331 Mo. 507, 55 S. W. (2d) 275; Conklin v. Missouri Pacific Railroad Co., 331 Mo. 734, 55 S. W. (2d) 306.] We note that alleged falsification on accounts and representations concerning plaintiff's indebtedness to the Finance Corporation (which would be representations concerning existing facts) were not submitted. We further note that plaintiff's Instruction No. 3 authorizing the jury to disregard the release seems to have the same defect as those criticized in Brown v. Worthington, 162 Mo. App. 508, 142 S. W., 1082, and Link v. Aiple-Hemmelmann Real Estate Co., 182 Mo. App. 531, 165 S. W. 832. [See also McCoy v. McMahon Const. Co. (Mo.), 216 S. W. 770; State ex rel. Order of United Commercial Travelers v. Shain, 339 Mo. 903, 98 S. W. (2d) 597.]

Plaintiff further contends that "defendants waived their general denial by their subsequent plea of confession and avoidance; hence, there was no issue except the purported avoidance." To so construe defendants' pleadings would be too technical and violate the rule stated in Section 801, Revised Statutes 1929. The allegations concerning the prosecution of plaintiff only amounted to uniting a general and specific denial in the same answer as authorized in Section 776, Revised Statutes 1929. The affirmative defense of release was not a statement of new matter inconsistent with a general denial. [Thurston v. Kansas City Term. Ry. Co. (Mo. App.), 168 S. W. 237; Ruff v. Milner, 92 Mo. App. 620; see, also Houts Missouri Pleading & Practice, pp. 179-180, sec. 104.] Especially would that be true here, since it was alleged that this release recited that neither party does thereby "admit, in any manner, the claims of the other party." Pleas that amount to both a denial and an admission of exactly the same thing are of course inconsistent and that was the situation in the cases cited by plaintiff. [State ex inf. Hadley v. Delmar Jockey Club, 200 Mo. 34, 98 S. W. 539; Cowell v. Employers' Indemnity Corp., 326 Mo. 1103, 34 S. W. (2d) 705.] We hold that the special pleas here do not affect the general denial. Defendants also set up the Statute of Limitations but that could not be inconsistent with any other defense. [May v. Burk, 80 Mo. 675; Schaefer v. Causey, 8 Mo. App. 142; Schuchman v. Heath, 38 Mo. App. 280.]

The judgment is reversed and the cause remanded. *Ferguson* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur, except *Lucas, J.,* not sitting.