CHARLES M. POWELL and SADIE E. POWELL v. THE MOST WORSHIPFUL
GRAND LODGE ANCIENT FREE AND ACCEPTED MASONS for the State
of Missouri and ITS MASONIC JURISDICTION, a Corporation, and
R. LEON HILL, Appellants.—163 S. W. (2d) 1038.

Division One, July 1, 1942.

Rehearing Denied, July 28, 1942.

956

*Jesse L. England* for appellants.

*Geo. L. Vaughn* for respondents.

958

HYDE, C.—This is an action in equity to set aside a deed of trust on the ground that it was obtained by duress; also claiming that defendants charged usurious interest and that plaintiffs were entitled to certain credits on claims made against defendants. The court found for plaintiffs on the issue of duress, adjudged that the deed be cancelled, and entered judgment for plaintiffs for $156.60. Defendants have appealed.

The trust deed was given in completion of a transaction between the parties which resulted from the following situation. Plaintiff, Dr. Powell, and Rev. John L. Cohron, were directors of the Midwest Life Insurance Company which had financial difficulties in 1929. They then made separate trust deeds upon real estate, owned individually

by each of them, to provide first mortgage notes for use as collateral security for a $17,000.00 loan made by defendant Grand Lodge. (We will refer to Dr. Powell as plaintiff and the Grand Lodge as defendant, since they are the actual interested parties.) Default was made in payment and these trust deeds were foreclosed August 21, 1930, after unsuccessful suits to prevent foreclosure by injunction. Both properties were bought in at the foreclosure by defendant. However, plaintiff and Rev. Cohron each gave redemption bonds and remained in possession. In the meantime, plaintiff's property was taken in condemnation proceedings by the City of St. Louis in the widening of Market Street. The redemption period expired August 21, 1931, and prior thereto (August 10, 1931) all the parties made a contract of settlement.

This contract stated that plaintiff and Rev. Cohron had defaulted in the payment of the notes and trust deeds and that the defendant had sold the real estate under them; that plaintiff and Rev. Cohron could not "make redemption according to law" and would not attempt further redemption proceedings; "and that the trustee may upon the expiration of said redemption period issue deeds thereby deeding over the right, title and interest of the said J. L. Cohron and Charles M. Powell in said real estate to said Grand Lodge." It was further agreed that the condemnation award for plaintiff's property was to be paid to defendant; and that defendant would sell to plaintiff the property of Rev. Cohron which it had acquired by the foreclosure.

This part of the contract was as follows:

"It is further agreed by the parties hereto that upon taking over by the said Grand Lodge of the real estate of J. L. Cohron, located at 3944 Finney Avenue and 3943-45 Fairfax Avenue, St. Louis, Mo., that it will in turn execute to Charles M. Powell and his wife a Warranty Deed to said property deeding to them all rights, title and interest owned by the said Grand Lodge that the said Charles M. Powell and his wife will concurrently with the giving of said Warranty Deed execute to the said Grand Lodge the first party herein, their deed of trust and note against said property in the sum of Three Thousand one hundred twenty-five Dollars and fourteen cents ($3,125.14), more or less dependent upon the award of the City of St. Louis on the condemnation of the property of Charles M. Powell, owned at 2611 Market Street, St. Louis, Missouri, which was foreclosed in August, 1930."

The total award for plaintiff's property was $18,500.00, but it was not then known what net award would actually be paid, because taxes assessed against this property were to be deducted. There was considerable delay in closing the transaction partly due to the refusal of Rev. Cohron to give possession. When the deal was finally completed by defendant's conveyance of Rev. Cohron's property to plaintiff, it was immediately conveyed by plaintiff to Everette Wood-

ward. Rev. Cohron's claims then caused another lawsuit to be brought by plaintiff's grantee after the transaction was completed. [Woodward v. Cohron, 345 Mo. 967, 137 S. W. (2d) 497.] The deed of defendant to plaintiff and plaintiff's trust deed (on the Cohron) property were both dated October 5, 1931, but the trust deed was not executed until November 10, 1931, and both deeds were thereafter delivered.

Plaintiff's claim is that the account for which the trust deed was given could not have been for more than $1464.00, and claims that attorney's fees and taxes should have been deducted from that amount. Plaintiff's claim is based on figures, which he said were given to him when the August 10, 1931, contract of settlement was executed, as follows:

| | |
|---|---:|
| Principal of loan to be paid | $17,000.00 |
| Total accrued interest at 6% | 1,765.00 |
| Foreclosure cost on Cohron property | 183.30 |
| Foreclosure cost on plaintiff's property | 227.70 |
| Attorneys fees | 438.00 |
| | 19,614.00 |
| Amount of condemnation net award as alleged in plaintiff's petition | 18,150.00 |
| | 1,464.00 |
| Deduct delinquent taxes and special assessment on plaintiff's property | 882.76 |
| | 581.24 |
| Deduct charge for attorneys fees | 438.00 |
| | 143.24 |

Plaintiff claimed credit for rents which was found by the court in its decree to be $340.00. There was some difference between the court's finding as to interest but the court's decree sustained plaintiff's claim that he owed defendant nothing when he signed the $2600.00 deed of trust.

Plaintiff's claim, therefore, is that the condemnation award for his property, and subsequent rents, were sufficient to pay defendant's loan in full and that he was entitled to conveyance of the Cohron property under the settlement contract without any other payment or mortgage debt whatever. Plaintiff further contends that he was compelled by duress to sign the trust deed and that it is void ab inititio for that reason. Plaintiff did, however, in the nature of an offer to do equity, offer to pay defendant whatever amount, if any, which the court should find to be due. Defendant's answer was a general denial and the claim of ratification by the sale to Woodward. Plaintiff's

claim of duress was a threat by defendant to refuse to convey the property at all unless plaintiff and his wife signed the $2600.00 trust deed, so that plaintiff would have lost all the value he was salvaging out of the transaction under the settlement contract. Plaintiff had the Cohron property sold to Woodward for $9000.00, and got $3500.00 in cash in addition to cancellation of a $2000.00 debt he owed to Woodward. It took the rest of this purchase price to pay the delinquent taxes on the Cohron property.

■ Plaintiff cites State ex rel. Order of United Commercial Travelers v. Shain, 339 Mo. 903, 98 S. W. (2d) 597, and authorities therein discussed; also White v. McCoy Land Co. (Mo. App.), 87 S. W. (2d) 672; see also White v. Scarritt (Mo. App.), 101 S. W. (2d) 763, affirmed 341 Mo. 1004, 111 S. W. (2d) 18. The White cases, however, involved a very different state of facts. Certainly the Commercial Travelers case (which was a compromise settlement) does not support plaintiff, because this court therein quashed the opinion of the Court of Appeals both in its holding that there was sufficient evidence to make a case of duress and in its holding that tender of benefits received was not necessary to cancel the contract of compromise for duress. These rulings were held to conflict with the decision of Wood v. Kansas City Home Telephone Co., 223 Mo. 537, 123 S. W. 6, also cited by plaintiff and which is likewise a contract of compromise case. However, plaintiff is not even in as favorable position as the parties claiming duress in those cases. Here all alleged acts of duress occurred after the contract of settlement was signed. They were claimed only in connection with obtaining the execution of the $2600.00 trust deed. The trouble with that is plaintiff had long before agreed by the written contract to make a trust deed for $3125.00. It is true that this amount was conditional upon the size of the City's net award but it seems apparent (see defendant's computation hereinafter set out) that it was figured on the basis of a net award of about $18,000.00. The actual net award was almost $100.00 less than that, but the amount of the trust deed was not increased but decreased. It was in fact decreased by $525.00, which shows that plaintiff was given a more favorable deal on the trust deed by defendant than their contract required.

Furthermore, the whole situation does not show that there was any equity in plaintiff's case. Plaintiff had held up defendant's title under the foreclosure by injunction and by redemption proceedings but, according to the recitals of the contract, was unable to redeem. Therefore, defendant would have shortly obtained complete title to all the property and could have sold any of it to anyone for any price it could get or could have refused to sell it at all. It did enter into a contract with plaintiff to sell him the Cohron property at an agreed price which with the condemnation award, was obviously computed as the amount necessary to repay to defendant its original loan,

interest and all expenses it had incurred in connection with the litigation. Plaintiff signed this contract and thereby agreed to pay that price. Nevertheless, he finally paid less by getting the purchase price trust deed reduced from $3125.00 to $2600.00. "One cannot recover back money paid under compulsion if it is just what he ought to have paid voluntarily." [Field v. National City Bank, 343 Mo. 419, 121 S. W. (2d) 769.] Even "the fact that one refuses to comply with the terms of a valid existing contract does not predicate duress invalidating a new contract." [17 Am. Jur. 891, sec. 16; Wood v. Kansas City Home Telephone Company, supra.] Moreover, the contract gave defendant the right to consider it "null, void and of no effect," if plaintiff or Cohron should "commit any other acts in contravention of the contract." The most that plaintiff's evidence could show would be refusal of defendant to perform the existing contract unless plaintiff agreed to pay more, and under the above authorities that would not be sufficient to constitute duress; but the actual situation disclosed by the evidence is that it was plaintiff who refused to perform and obtained a $525.00 concession (or more) from defendant. There is no claim of invalidity, or grounds for reformation, of the original contract, and while it stands it controls the whole transaction and precludes any consideration of the claims made by plaintiff. We, therefore, hold that claim of duress cannot be sustained.

Plaintiff also claims that the trust deed was tainted by usury. Defendant's computation upon which the amount due was determined is, as follows:

| | |
|---|---|
| Principal of loan to be paid | $17,000.00 |
| Total accrued interest | 2,319.00 |
| Attorneys fees | 1,185.00 |
| Foreclosure and other expenses | 610.35 |
| | $21,114.35 |
| Actual condemnation net award | 17,903.03 |
| | 3,211.32 |

This is the amount for which the trust deed should have been given under the contract of August 10, 1931, according to defendant's evidence. (The amount stated of $3125.14, would have required a net condemnation award of $17,989.21 to balance.) We are not informed by the evidence what rate of interest was used or whether the original mortgages provided for 8% after default as did the new one. While the testimony of defendant's treasurer showed some expense items and attorneys' fees which may not have been actual foreclosure expense, when the trust deed was cut down to $2600.00 much of these amounts were eliminated. In any event, as we have stated, the contract of August 10, 1931, was actually a bargain and sale trans-

action, made in view of the fact that defendant's foreclosure title would be completed by operation of law, so that defendant had the right to fix the purchase price on whatever basis it saw fit to use. The time for plaintiff. to negotiate about these matters was before he signed that contract. We hold that plaintiff failed to make a case of usury.

We also hold that the delinquent taxes on the Cohron property were properly left to be paid by plaintiff or his grantee. The contract stated defendant's obligation, in conveying this property, to be "deeding to them (plaintiff and his wife) all rights, title and interest owned by the Grand Lodge." The reasonable interpretation of this, in view of the whole contract and the entire situation, is that defendant was only to convey what it got by the foreclosure, namely, the Cohron title subject to any delinquent taxes. Clearly the intent shown by this contract was to make a deal which would obtain for defendant the full amount of its loan, interest and all expense of the foreclosure and the litigation over it. The mortgagor of course has the obligation to pay taxes on the property securing the mortgage. The matter had reached the point where defendant was about to get complete title under the foreclosure. The properties it was getting thereunder were worth the full amount of its loan, interest and expense, and much more. These were all part of or came out of trust funds, the property of the Lodge. There was good reason for defendant to seek to fully replace them to keep such funds intact and defendant certainly had the legal right, if not the obligation to its members, to do so. Plaintiff made the contract on that basis and must abide by it. The contract did not fix a specific time for defendant to deliver possession of the Cohron property to plaintiff, and it is apparent that the delay was in part due both to plaintiff's contention with defendant over the amount of the trust deed and the controversy between plaintiff and Cohron. However, the $525.00 reduction from the contract amount was more than the claim allowed for loss of rents.

The decree is reversed and the cause remanded with directions to enter judgment of dismissal. *Bradley* and *Dalton CC.*, concur.

PER CURIAM:—The foregoing opinion by Hyde, C., is adopted as the opinion of the court. All the judges concur.